UTICA,
August, 1829.

Holladay
v.
Marsh.

HOLLADAY *vs.* MARSH.

Where there has been a *division fence* between the owners of adjoining lands, and one of them, after giving due notice of his intention to throw up his lands for *common feeding,* or to *let them lay open*, removes his part of the fence, and his cattle enter upon the lands of his neighbor, the owner of such cattle is liable to an action of *trespass* at the suit of his neighbor, notwithstanding that the fence was not removed until after the time specified in the statute.

THIS was an action of trespass, tried at the Schenectady circuit, in September, 1827, before the Hon. WILLIAM A. DUER, one of the circuit judges. The declaration was in *trespass quare clausum fregit* and *de bonis asportatis*. The defendant pleaded the general issue, and gave notice of special matter intended to be given in evidence.

The parties were owners of adjoining lands, between which there was a division fence, extending on a line north and south. By agreement between the parties, the *south* half of the fence had been maintained by the plaintiff, and the *north* half by the defendant. On the 24th March, 1826, the defendant gave notice to the plaintiff that he intended to throw up his lands, adjoining the plaintiff, for common feeding, or to let the same lay open, and purposed to remove his part of the division fence. On the 18th July, 1826, the defendant, in pursuance of such notice, took down and removed a portion of his part of the division fence, and through the opening thus made, the cattle of the defendant entered upon the lands of the plaintiff, and did injury to his crops of corn and

A notice of an intention to throw up lands, or to let them lay open, may be by *parol*.

A party who has received such notice, cannot object that other persons in possession of adjoining lands have not received a similar notice.

The only effect of throwing up land, or permitting it to lay open, is to remit the parties to their common law rights and duties, which are : that a tenant of a close is not obliged to fence against an adjoining close, and without such fence may bring trespass for an entry of cattle ; the owner of the cattle being obliged to keep them on his own premises, in the absence of an agreement or prescription about fences.

Where cattle are *rightfully* feeding upon *commons*, either such as belong to the town or such as are thrown up to *common feeding*, under the *seventeenth* section of the act, the owner of crops is bound to make fences against such cattle, or he cannot maintain trespass.

Cattle can be thus *rightfully* feeding, only in pursuance of a regulation adopted in town-meeting.

Whether that part of the seventeenth section which speaks of throwing up land to common feeding, does not relate only to such towns as have *common lands* in their *corporate capacity*? Quere.

*It* seems that the *twelfth* section of the act relative to the duties and privileges of towns authorising prudential rules and regulations respecting the permitting or preventing cattle to go at large, has reference to such towns *only* as have *common lands*, the property of the town in its *corporate capacity ;* and that a town having no *common lands* in its *corporate capacity*, has not the power to pass such regulations, the public not having the right to depasture *highways*.

A witness on his examination, may recur to a written memorandum to refresh his memory as to facts to which he is called to testify.

oats there growing. The lands of the defendant adjoining the plaintiff were bounded on a highway, and other cattle besides those of the defendant entered upon the lands of the plaintiff. In addition to these facts it appeared on the trial, that the servants of the defendant drove his cattle into the field adjoining the plaintiff's lands, after they had been driven from the plaintiff's lands into the public highway; and that at a certain time, when the plaintiff and his servants attempted to drive the defendant's cattle from off the land, they were prevented by the defendant, who, besides using very abusive and threatening language towards the plaintiff drove the cattle into a field of the plaintiff. It was also proved that the defendant said he had prepared a notice for other persons of his intention to lay open his lands, but did not mean to serve it, as he did not wish to injure any one besides the plaintiff. The damages of the plaintiff were proved to the amount of $20, and that the cost of a stone wall, built to replace the fence which was removed, was about $26.

It was objected on the trial that the *notice* given by the defendant of his intention of letting his hands lie open, should have been *in writing*. The judge decided that a notice by *parol* was sufficient, but that it ought to have been given to all the persons in possession of adjoining lands. To this opinion the defendant excepted. There was an exception also taken to another decision of the learned judge : a witness of the plaintiff being asked to state the days and times when he had seen the cattle of the defendant upon the premises of the plaintiff, answered, that he could not do so without reference to a memorandum in writing made by him at that time, and now in his possession. Such reference was objected to by the defendant, but the judge decided that it was competent for the witness to refer to the memorandum for the purpose of refreshing his recollection.

The judge charged the jury that the only question before them was the amount of damages; that the defence set up had been adjudged by the court insufficient; but that, had it not been so adjudged, there was no excuse for the defendant's causing his cattle to be driven upon the lands of the plaintiff, and for entering upon the lands himself, and by vio-

UTICA,
August, 1829.

Holladay
v.
Marsh.

lence preventing the plaintiff from turning away the cattle; that the jury were bound by their verdict to give the amount of damages actually proved, and were at liberty to add, by way of smart money, such sum as would indemnify the plaintiff, and teach the defendant a wholesome lesson, if, from the circumstances, they were satisfied that the trespass was wilful and malicious. The jury found a verdict for the plaintiff, with $75 damages. A motion was now made to set aside the verdict, and that a new trial be granted.

*H. P. Hunt,* for defendant. The defendant having given the notice required by the statute of his intention to let his lands lay open, was not chargeable as a trespasser for the escape of his cattle from his own premises. The plaintiff having received notice himself, had no right to complain that notice was not given to all the persons in possession of adjoining lands; and the judge therefore erred in instructing the jury that the defendant was not entitled to the benefit of the defence he had set up. The charge of the judge was also calculated to mislead the jury as to the amount of damages, in omitting to instruct them that the plaintiff had no claim for the rails taken away, and for building the stone wall. He cited 2 R. L. 133, § 17: 1 Cowen, 78, n.; 6 Mass. R. 98, 99; 9 Johns. R. 136; 12 id. 433.

*M. T. Reynolds,* for plaintiff. The only effect of a notice in such cases is, to excuse a party from liability for the repair of a fence formerly maintained by him, and from the payment of damages which may be sustained by his neighbor in consequence of its removal; it does not justify a trespass. The defendant was bound to keep his cattle upon his own land, and to see they did not enter upon the land of the plaintiff. At the expiration of three months from the time of notice, the parties were in the same situation as if a division fence had never been made between their lands, and each was bound to restrain his own cattle to his own premises. Neither the common law or statute requires that a landholder shall fence against his neighbor. (19 Johns. R. 385. 1 Cowen, 78.) No objection can now be urged against the charge of the judge, none having been made at the trial. Besides, the judge

was not desired by the party to charge upon the points now presented. The verdict was well warranted by the testimony.

*By the Court,* SAVAGE, Ch. J. In order to have a clear understanding of the existing rights of the parties, it will be useful to enquire what were their relative rights and duties at common law, and what alterations are made by the statute.

"At common law," says Ch. Justice Parsons, in *Rust* v. *Low,* (6 Mass. R. 94,) " the tenant of a close was not obliged to fence against an adjoining close, unless by force of prescription ; but he was at his peril to keep his cattle on his own close, and to prevent them from escaping ; and if they escaped, they might be taken on whatever land they might be found *damage feasant,* or the owner was liable to an action of trespass by the party injured." "Every unwarrantable entry on another's land is a trespass, whether the land be enclosed or not. A person is equally answerable for the trespass of his cattle as of himself." (*Wells* v. *Howell,* 19 Johns. R. 385. 3 Black. Comm. 209, 211.) "Every person, then, may distrain cattle doing damage on his close, or maintain trespass against the owner of the cattle. unless the owner can protect himself by the provisions of the statute, or by a written agreement, to which the parties to the suit are parties or privies, or by prescription." (6 Mass. R. 97.)

Where there was no agreement or prescription, there was no mode by which one tenant could compel the tenant of an adjoinining close to make division fences ; and even where there was such agreement or prescription, the remedy was by action upon such agreement or prescription. Our statute *(relative to the duties and privileges of towns,* 2 R. L. 133, § 17,) however, has altered the rights of the parties. Where the lands of two persons join, each shall make a just proportion of the division fence, unless they agree to let their lands lie open. If any person shall neglect to make or keep in repair his proportion of such fence, he shall be liable to such damages as shall accrue by reason of his negligence ; and if he omit to make or repair his proportion of the fence for one month after notice and request, then the party injured may make or repair the fence at the expense of the party so neg-

UTICA.
August, 1829.

Holladay
v.
Marsh.

lecting to do it. And in case any person who shall have made his proportion of the fence, shall be disposed to throw up his lands for common feeding, or to let the same lay open, he shall give three months notice to the person or persons in possession of the lands adjoining; and if the fence shall be removed before the expiration of three months, the person removing it shall pay all damages sustained by such removal.

Under this statute, it has been decided that where hogs entered a corn field through the plaintiff's own fence, the same being insufficient, the plaintiff could not recover; but had they entered through the defendant's fence, the plaintiff would have recovered. (12. Johns. R. 433.) And the case of *Wells* v. *Howell*, (19 Johns. R. 385,) decides that as against a highway, where cattle have no right to run, no fence at all is necessary, to enable the plaintiff to maintain trespass. In the application of these principles to this case, how are the parties affected? Had the statute never been passed, the defendant must have kept his cattle in his own premises in the absence of all agreement or prescription about fences. The plaintiff, without any fence, could bring trespass for the injury he has sustained. Had the fence remained under the statute regulation, it being the fence of the defendant, and had the same injury been inflicted, the plaintiff would have sustained trespass. Is the defendant, by throwing up his land to common feeding, or to lay open, in a better, or the plaintiff in a worse situation, than at common law? Into what is the defendant's field converted by removing the partition fence? Is it a common highway? or does it become the common lands of the town? or does it remain the property of the defendant, for any trespass upon which he may maintain an action? If it became *common lands*, the defendant's cattle were wrongfully there without a bye-law of the town permitting cattle to run at large. So, too, if it became a highway: and if the character of the field was not altered, the utmost effect of the defendant's withdrawing his fence under the statute would be to remit the parties to their common law rights and duties. The statute was intended for the convenience and accomodation of all concerned; not to enable one man to destroy his neighbor's crops under cover of the law.

By the twelfth section of the act, towns have a right to make such prudential rules as they think proper for improving their common lands in tillage and pasturage, or any other way, and for permitting or preventing cattle, &c. to go at large, and for directing the time and manner of using their common lands. This section undoubtedly has reference to such towns only as have common lands, the *property* of the town in its corporate capacity ; and it may well be doubted whether the seventeenth section does not also relate to such towns only as have commons, when it speaks of throwing up land to common feeding, or to let the same lay open.

Suppose a case where the town has no common land, and they pass a bye-law permitting cattle to run at large, where are they to run ? Surely not on individual property. Where then ? in the highway ? The public have simply a right of passage over the highway ; they have no right to depasture the highway. The owner of the lands through which the highway runs is the owner of the soil, and of the timber, except what is necessary to make bridges, or otherwise and in making the highway passable. (15 Johns. R. 453 ;) and if the owner of the soil owns the timber, why not the grass ? This question has never been distinctly raised in this court, and some intimations have been given, from which it might be inferred that towns have a right to permit cattle to run at large in the highways ; but in *Stackpoole* v. *Healy*, (16 Mass. R. 33,) the question has undergone a very full consideration and discussion, and the supreme court of Massachusetts have decided that the public have no such right in highways. The statute in that state is in stronger terms than ours ; but it was holden to relate to *common lands* only, and not to highways. It is not necessary now to decide that point, because no regulation of the town is shewn permitting cattle to go at large. If the defendant's cattle were in the highway or a common, they were there unlawfully, without authority from the town ; and it is certainly well settled, that a man is not obliged to fence against any cattle but such as may be rightfully on the adjoining close. (6 Mass. R. 99. 16 id. 38. 2 H. Black. 527. 19 Johns. R. 385.) In towns where there are common lands, or where the town has authority to direct

UTICA,
August, 1829.

Holladay
v.
Marsh.

the times and manner of using such lands, if a party chooses to throw up his fields to common feeding, and cattle are rightfully feeding upon commons, either such as belong to the town, or such as are thrown up to common feeding under this section, the owner of crops must undoubtedly make fences against such cattle so lawfully grazing ; and to such cases only, I apprehend, is this provision of the statute applicable.

Some minor questions were raised which require a decision.

On the part of the defendant it was objected, that the testimony of one of the witnesses was improperly admitted, because he referred to a memorandum to refresh his memory. This is always permitted and is unobjectionable.

It was also objected, that the notice given by the defendant should have been in writing. It is a sufficient answer to say, that the statute does not require that it should be in writing. The judge however, decided the notice was defective, because it was given to the plaintiff only, and not to the other owners of the adjacent lands. It is true that the statute requires notice to be given to the person or persons in possession of the lands or meadows adjoining ; but it seems to me that the plaintiff cannot object to the want of notice to others, since it was given to him, particularly as no fence was removed, but that between the land of the plaintiff and the defendant. But if the judge erred in this particular, the defendant is not prejudiced by the decision, *if I am correct* in the view I have taken of this case.

There is another view of the case, which is sufficient to sustain the verdict, *even if I am in error* as to the law as above laid down. It is this : that the defendant not only took away his fence with the declared intention to injure the plaintiff, but, lest his cattle should not destroy the plaintiff's crops voluntarily, his wife and son drove them from the highway into the field, near the plaintiff's crops ; and when they were actually committing the work of destruction, the de-

fendant himself, not only did not turn them out, but by threats prevented others from driving them out of the plaintiff's fields. On the whole, the verdict seems to be lawful, and it certainly is just.

Motion for new trial denied.