Griffin *v.* Martin.

---

SAME TERM.      *Before the same Justices.*

7   297<br>86h 430

### GRIFFIN *vs.* MARTIN.

The act of the legislature (1 *R. S.* 340, 341, § 5, *sub.* 11) empowering " the electors of each town, at their annual town meeting, to make rules and regulations for ascertaining the sufficiency of all fences in such town; and for determining the times and manner in which *cattle, horses or sheep shall be permitted to go at large on highways,*" is not contrary to the constitution of this state. (*Art. 1, § 6, of the Constitution of* 1846.) HAND, J., dissented.

The act relative to highways and bridges (1 *R. S.* 515, § 65) providing for the assessment of damages of the owner of the land through which highways are laid, is to be construed in connection with the act which authorizes the electors of the town to permit cattle, horses and sheep to go at large on the highway.

The damages assessed to the owner, through whose lands a highway has been laid out, since the revised statutes took effect, must be presumed to be coextensive with the use to which such road may by law, be devoted; and, consequently, to cover, not only the easement of a public way, but also, such right of pasture by cattle, horses and sheep, as the said statutes authorize the electors, at their annual town meeting, to permit.

The owner of a close, through whose defective fences, cattle, lawfully in an adjoining close or the highway, have entered, can not maintain an action against the owner of such cattle, for damages. HAND, J., dissented.

The *dicta* in *Jackson* v. *Hathaway*, (15 *John.* 453,) *Holladay* v. *Marsh*, (*3 Wend.*

VOL. VII.      38

Griffin *v.* Martin.

162,) *Gidney* v. *Earl*, (12 *Id.* 98,) *Tonawanda Railroad Co.* v. *Munger*, (5 *De-nio*, 255, 264,) and *White* v. *Scott*, (4 *Barb. S. C. Rep.* 56,) commented on and explained.

GRIFFIN sued Martin before a justice of the peace of St. Lawrence county, and on the joining of issue, complained against the defendant, for trespass done by the defendant's cattle, on the plaintiff's close, in the town of Pierpont, on divers days between *the first* day of June and the middle of October, 1848, and thereby destroying corn, grass and wheat of the plaintiff to his damage of ten dollars. The defendant answered, that if his cattle entered upon the plaintiff's close it was owing to the defect of fences which the plaintiff was bound to keep in repair; and that 2d, the cattle entered, if at all, from the highway, in consequence of the insufficiency of the plaintiff's fences, along the highway, and that by a by-law or resolution of the town of Pierpont, cattle might lawfully run in, and pasture the highway. The plaintiff replied denying the facts stated in the answer. The cause was tried before the justice on the 26th of October, 1848. On the trial, it was proved that within the period specified in the declaration, the defendant's cattle broke and entered the plaintiff's close several times, and did damage to his crops. On some occasions they got over a division fence between the plaintiff and the defendant, which was broken and defective, and which the plaintiff was bound to repair; and on other occasions they entered the plaintiff's close from the highway, through the plaintiff's fence, which was defective, and not over three feet high. The plaintiff's damage was proved to be ten dollars. It was proved on the part of the defendant that a resolution was passed at the town meeting of the town of Pierpont, in 1838, in these words—" Voted that all orderly neat cattle have a right to run at large from the 1st of May to the first of November in each year." And also another in these words—" Voted that all fences shall be equal in strength to a good rail fence four and a half feet high;" both of which resolutions remain unrepealed.

There was some evidence tending to show that the defendant's cattle were unruly, but the fact, that the plaintiff's division fence between him and the defendant, and his fence next

---

---

the highway, were defective and insufficient was not disputed; and the fact as to the unruliness of the defendant's cattle was abandoned. The defendant moved the justice for a nonsuit, on the ground that the defendant's cattle were rightfully in the highway and in the defendant's lot adjoining the plaintiff's premises, at the several times when they entered the plaintiff's premises, through the defect or want of fence which the plaintiff was bound to make and maintain. The justice granted the motion, and nonsuited the plaintiff. The county court of St. Lawrence county, on an appeal, affirmed that judgment, and the case came before this court on an appeal by the plaintiff.

*T. V. Russell*, for the appellant.

*W. A. Dart*, for the respondent.

WILLARD, J. The important question arising on this appeal, and the only one which we understand was discussed in the courts below, is, whether the act of the legislature, empowering the electors of each town, at their annual town meeting, "to make rules and regulations for ascertaining the sufficiency of all fences in such town; and for determining the times and manner in which cattle, horses or sheep shall be permitted to go at large on highways," is authorized by the constitution of this state. (1 *R. S.* 340, 341, § 5, *sub.* 11.) With respect to the first branch of the foregoing provision, it is not perceived in what respect it is in conflict with the constitution. Regulations for ascertaining the sufficiency of fences clearly fall within that branch of powers which the legislature may with propriety delegate to the towns. It is a branch of internal and domestic police, with respect to which the constitution is silent, and which can be better administered by the people in their primary assemblies, than by any other body. We entertain no doubt of the competency of the legislature to confer this power upon the electors of the several towns in the manner in which it has been granted.

It is the other branch of the section, namely, that which author-

izes the electors in town meeting "to determine the times and manner in which cattle, horses or sheep shall be permitted to go at large on highways," which has created the difficulty. The 44th section of the same statute (act concerning the powers, duties and privileges of towns, 1 *R. S.* 355) enacts, that whenever the electors of any town shall have made any rule or regulation, prescribing what shall be deemed a sufficient fence in such town, any person who shall thereafter neglect to keep a fence according to such rule or regulation, shall be precluded from recovering compensation, in any manner, for damages done by any beast lawfully going at large on the highways, that may enter on any lands of such person, not fenced in conformity to the said rule or regulation, or for entering through any defective fence. This enactment is merely in affirmance of the common law. (*Rust* v. *Low & Stanwood*, 6 *Mass. R.* 90.) As regulations existed in the town of Pierpont, antecedent to, and at the time of, the alledged trespasses by the defendant's cattle, prescribing what fences should thereafter be deemed sufficient, and fixing the time within which cattle might go at large on the highway, and as the plaintiff's fences were shown to be insufficient, according to those regulations, it necessarily followed that he could not recover, unless he could show the act in question to be in conflict with the constitution.

The provision of the constitution which it has been insisted is in derogation of the power claimed to be exercised by the legislature, is contained in the 6th section of the 1st article of the present constitution, and is in these words: "Nor shall private property be taken for public use without just compensation." This was taken from the 7th section of the 7th article of the constitution of 1821, and the latter from the 5th article of the amendments of the constitution of the United States. Our legislation on this subject commenced anterior to the adoption of the amendment to the United States' constitution. The 15th section of the act for dividing the counties of this state into towns, passed March 7, 1788, (2 *Greenl.* 170,) authorized "the freeholders and inhabitants of each and every town, at their respective annual town meetings, from time to time, to make, establish,

constitute and ordain such prudential rules, orders and regulations as the majority of the freeholders, &c. shall judge necessary and convenient for the better improving of their common lands in tillage, pasturage, or any other reasonable way; and for making, maintaining and amending their partition and circular fences for their lands, gardens, orchards and meadows; and for ascertaining and directing the use and management, and the times and manner of using their common lands and meadows and other commons; and the times, places, and manner of permitting or preventing cattle, horses, sheep and swine, or any of them, to go at large," &c. " and for ascertaining the sufficiency of all partition and other fences." This section remained in force until 1813, when it was incorporated literally into the act of the 19th of March of that year, entitled an act relative to the duties and privileges of towns. (2 *R. L.* 125, § 12, *p.* 131.) At the revision of the laws in 1830, it was re-enacted in an amended form as proposed by the revisers, omitting " swine" from the class of animals suffered to run at large, and adding to the sentence " on highways." The legislature then, in effect, adopted the construction which the supreme court in *Shepherd* v. *Hees*, (12 *John.* 433,) and in *Wells* v. *Howell*, (19 *Id.* 385,) put on upon the words of the former statute, " to go at large." The legislature intended to rescue the statute from the construction which Judge Cowen gave it in his elaborate note to *Bush* v. *Brainard*, (1 *Cowen*, 78;) and in his valuable Treatise on the civil jurisdiction of justices of the peace, part 1, 383, et seq.

The question whether the act under consideration is in conformity to the constitution or not has never been distinctly passed upon by this court, and I am not aware of any case in which it has been necessarily involved. We have *dicta* from highly respectable sources, adverse to the power, but accompanied with no examination of our recent legislation on the subject. Thus, in *Holladay* v. *Marsh*, (3 *Wend.* 142,) which arose before the revised statutes, Chief Justice Savage intimates a doubt whether it was competent for the legislature to authorize a town to permit domestic animals to depasture the highway. And he observes that the public have simply a right of passage over the

highway, and have no right to depasture it.   The owner of the
land through which the road runs is still the owner of the soil
and of the timber, except what is necessary to make and repair
bridges; and he asks, if the owner of the soil owns the timber,
why not the grass? and he refers to 15 *John.* 453; *Stackpole* v.
*Healey,* (16 *Mass.* 33; 6 *Id.* 99; 16 *Id.* 38.)  In *Gidney* v. *Earl,*
(12 *Wend.* 98,) it was held that where a road runs through a
man's close, *prima facie,* the fee of the land over which the
road passes, belongs to him.   The law, says Nelson, J. will not
presume a grant of a greater interest or estate than is essential
to the enjoyment of the public easement; the rest is parcel of
the close."  In *The Tonawanda Railroad Co.* v. *Munger,* (5 ·
*Denio,* 255, 264,) Beardsley, Ch. J. expresses similar views, con-
cluding with the opinion that the legislature " do not possess the
power in question, whether compensation be made or not, but
certainly in no case unless compensation is made."   This opin-
ion was not essential to a decision of the cause before him, as
the action was for killing cattle, not on a public highway, but
on a railroad where they were confessedly trespassers.   In
*White* v. *Scott,* (4 *Barb. Sup. C. Rep.* 56,) McCoun, Justice,
took occasion incidentally to remark, when speaking of a town
ordinance similar to the one in this case, " that the power of a
town meeting can not lawfully be exercised beyond allowing
the owners of the soil to turn their own animals out to feed, on
such parts of the highway as they respectively own, under such
safeguards (rules and regulations) as shall prevent any obstruc-
tion of the public use or travel, and as shall, at the same time,
avoid collisions and trespasses by the beasts of one owner upon
the property of another."   And he further intimates, that a town
ordinance, like the one in question, is void, as extending beyond
the authority which the electors of the town, in their collective
capacity, possess under the statute.   The learned judge does
not consider the act of the legislature unconstitutional, as was
urged by Judge Cowen in his Treatise and note, supra, but he
gives a construction to it, entirely novel, and which defeats the
main object and policy of the law.   Under his construction, the
act does not empower the towns to pass ordinances allowing·

Griffin *v.* Martin.

cattle, sheep and horses to run at large on the highway, but merely to adopt regulations with respect to the *time* and *manner* in which the owner of the freehold may depasture the road which passes through his own close.   He views the act as restrictive of the right which might otherwise be enjoyed.   He assumes, however, that the act would be unconstitutional, if it allowed the towns to treat the public highways, in any respect, as a common of pasture.   Under this narrow construction of the act, none but the great landholders could derive any benefit from it.   The poor tenants and other inhabitants, not owners of the soil, would be entirely excluded.

Neither in *Holladay* v. *Marsh, Gidney* v. *Earl, White* v. *Scott,* nor in *The Tonawanda Railroad Co.* v. *Munger,* was the point we are considering necessarily involved, or in fact decided by the court.   In all the cases in which the constitutionality of the act in question has been doubted, the reasons assigned have been, that the soil and grass growing on a highway, belong to the owner of the land, through which the road passes, and that the public have merely a right of passage; and that the effect of the town by-law is to take the private property of the owner of the land, without compensation, for the use of those who permit their cattle to run at large on the highway. This was the ground taken in the cases just cited, and by Judge Cowen in his Treatise, and in the note before cited, and in all the adjudged cases to which we have been referred.   (1 *Cowen's Tr.* 386, *n.* 1.   *Bush* v. *Brainard,* 1 *Cowen's Rep.* 78, *and note a.   Jackson* v. *Hathaway,* 15 *John.* 453, *per Platt, J. Cortelyou* v. *Van Brundt,* 2 *Id.* 357.   13 *Mass. Rep.* 258.   16 *Id.* 33.   12 *Wend.* 98.   6 *East,* 154.   3 *Hill,* 567, 568.   4 *Barb.* 56.   5 *Denio,* 264, *per Beardsley, Ch. J.*)   Whatever may have been the force of this argument prior to the revised statutes, it is obvious that since the 1st of January, 1830, it is based upon a false assumption.   It takes for granted that the owner of the land receives compensation merely for the easement or right of passage.   This is not so.   The statute which regulates the compensation to be made to the owner through whose lands public highways are laid, does not confine the damages to what

arises from parting with a mere right of way. By the 65th section of the act relative to highways, bridges and ferries, (2 *R. S.* 515,) when the owner of the soil and the commissioners of highways can not agree upon the damages, a jury composed of twelve disinterested freeholders, residing in some other town, are directed to be summoned "*to assess the damages sustained by the laying out of such road.*" These damages will depend on the quantity of interest which is vested in the public. It might be competent for the legislature to take the entire fee of the land; in which case the compensation should be increased accordingly. It is presumed that the public become vested with such interest as the legislature authorize them to use. The existing law, if we consider, as we should, the act relative to towns, and the highway acts, as part of an entire system, empowers the commissioners not only to take the right of passage, but the right of permitting cattle, horses and sheep to go at large on the highway, in such times and manner, as the electors of the town in their annual town meeting shall determine. The damages of the owner of the soil are regulated by what he relinquishes to the public. He thus is compensated not only for parting with the right of way, but for parting with the right of pasturage. Hence the main argument on which the objection to the law rests, is untenable.

It can not with truth be said that a by-law like the one in question, takes the property of one man and gives it to another, or even to the public, without compensation. The owner of the soil is not deprived of the pasturage, any more than he is of the way. He can enjoy both in common with his neighbors. In agricultural districts, and especially in new countries, the public benefit resulting from permitting cattle, horses and sheep to run at large, in highways, probably overbalances the increased expense of acquiring a title to the road. The intrusting the power of regulating the exercise of this right, to the electors of the town, in their annual town meeting, is in conformity to the analogy of our system of government, and will rarely ever lead to abuse. To no other persons could it more safely be confided. No danger is to be apprehended that towns will multiply high-

Griffin v. Martin.

ways for the purpose of acquiring common of pasture. The right of pasturage is a mere incident to the road, and the latter can not, in general, be laid out without the consent of the owner of the soil, over which it passes, except on the certificate upon oath, of twelve reputable freeholders of the town, not interested in the land, nor of kin to the owner, that such road is necessary and proper. It is not to be presumed that those gentlemen will give a false certificate for the sake of an incidental advantage, for which their town must pay an equivalent. (1 *R. S.* 514, §§ 60, 61.) Moreover the public have a guaranty against reckless and improvident applications of this kind, in the equitable and impartial remedy provided for making the assessment of the damages. (*Id.* § 65.)

The cases which have been cited from the English courts, and from those of our sister states, merely show what the common law was upon this subject. They throw no light upon the true interpretation of the revised statutes. Most of our own cases were based upon the former law, and in none of them, was the mind of the court brought to bear on the point we are considering. The supreme court of Massachusetts expressly concede, in *Stackpole* v. *Healy*, (16 *Mass.* 33,) " that the legislature might, if they thought it expedient, provide by law, that for the future, the soil of all highways, that should be laid out, should be vested in the public, and compensate the owner accordingly." And again ; they say, that " the pasturage never made any part of the inducement or reason for laying out highways." It has been shown that the statutes of this state since 1830, taken as a whole, subject the soil taken for a highway, not only to the easement of a right of way, but also to the right of pasturage for cattle, horses and sheep, at such times and in such manner as the electors of each town, at their annual town meeting, may prescribe. (*Compare act relative to highways*, 1 *R. S.* 513, §§ 54 *to* 101, *with the act relative to town meetings, &c.* 1 *R. S.* 340, § 5, *sub.* 11.) Those statutes, together with the twenty chapters of part 1, were finally passed, as one act, on the 3d of December, 1827, (1 *R. S.* 715, *note*,) and took effect the former on the 1st of January, 1828, and the latter on the 1st of Janu-

ary, 1830. (*See* 2 *R. S. appendix,* 777, *et seq.*) But, for the purpose of construction, it is expressly enacted, by the 12th section of the act concerning the revised statutes, (2 *Id.* 778,) that all the said statutes shall be deemed to have been passed on the same day, notwithstanding they may have passed, or taken effect, at different times. The right, therefore, to establish highways over the land of an individual, against his consent, and the duty of making compensation therefor, must be considered not only with reference to the easement of a way, but also, with reference to the right of common for such domestic animals as the legislature, at the same time, authorized the electors of the town to permit to run at large on the highways. The presumption, therefore, is that the owner of the soil has been compensated for the easement of a way and the right of pasturage, and that the present occupant held the land in subordination to the rights exercised by the electors of the town of Pierpont.

If, then, the regulations of the town of Pierpont with respect to fences, and the running at large upon the highway, of cattle, horses and sheep, are valid, as we have shown they are, the defendant's cattle were lawfully in the highway at the time the pretended trespass was committed; and the plaintiff, through whose defective fences they entered on his premises, can maintain no action for the trespass, and was justly nonsuited by the justice. (1 *R. S.* 355, § 44, *supra.*) It is settled that one is not bound to fence except against such cattle as are lawfully in the adjoining close or the public highway. (*Rust* v. *Low & Stanwood,* 6 *Mass. Rep.* 90. *Cowen's Tr. part* 1, 386, 387. 19 *John.* 385. 3 *Wend.* 145.)

The judgment of the St. Lawrence county court, affirming that of the justice, must be affirmed.

PAIGE, P. J., concurred.

HAND, J. The defendant in this case did not deny the trespass, but put his defence upon the insufficiency of the division fence of the parties, and the plaintiff's fence upon the road.

Griffin *v.* Martin.

The replication denied these facts, but upon the trial the plaintiff was nonsuited because his fence along the highway was insufficient; and the defendant's attorney swears that the only question upon the motion for a nonsuit, was the constitutionality of the resolution of the town, making rules and regulations for ascertaining the sufficiency of fences, and for determining the times and manner in which cattle, horses and sheep should be permitted to go at large in the highways. The trespass by the defendant's cattle getting into the plaintiff's close from the highway, was clearly proved; and then the defendant proved the two resolutions of the town, that all orderly neat cattle should have a right to run at large from the 1st of May to the 1st of November, and that fences should be equal in strength to a good rail fence four and one half feet high; upon which the plaintiff was nonsuited, because of the insufficiency of the fence. I think this case fairly raises the constitutional question which has been argued in this cause. And upon that point I have no doubt. If the town had the fee of the land and to its own use, that would be another matter. But that is not pretended. And as I understand the law, the public have but a servitude or easement of way over private lands taken for highways. If that be so, the public and individuals have no right to pass over it, except as a way. If they can depasture it, they can dig up the soil, build upon it, and cut down the trees. If they can take the grass, I see no reason why they may not put it to other uses. And if taking the land for a highway gives to others a right to depasture it, then it is not true that the private property of one can not be taken for the private use of another; and the boasted security to private property in this respect, supposed to be afforded by our laws, is nothing more than a false though beautiful sentiment. Even if a town has power, as a matter of police regulation, to compel the owner to fence along the highway and keep his own cattle off certain portions of the year, that confers no authority to give a license to other persons to appropriate the productions of the soil to their own use.

But the authorities are full upon this point. "The former proprietor," says Platt, J., "still retains his exclusive right in all

Griffin *v.* Martin.

mines, quarries, springs of water, timber and earth, for every purpose not inconsistent with the public right of way." *Jackson* v. *Hathaway*, 15 *John.* 447.) "In an highway the king shall have nothing but the passage for himself and his people." (4 *Vin.* 515.) "The freehold and all the profits belong to the owners of the adjoining lands." (3 *Kent*, 433, *and cases there cited.*) "The freehold and all the profits, as trees, &c. belong to the lord of the soil or to the owner of the lands on both sides the way." (3 *Bac.* 394.) "The public have simply a right of passage over the highway; they have no right to depasture the highway." (*Savage, C. J.* 3 *Wend.* 147.) This doctrine has been repeated again and again, not only in England and this state, but probably in every state in the Union. (*Cortelyou* v. *Van Brundt*, 3 *John.* 363. *Livingston* v. *Mayor of N. York*, 8 *Wend.* 107. *Gidney* v. *Earl*, 12 *Id.* 98. *Willoughby* v. *Jencks*, 20 *Id.* 97. *Barclay* v. *Howell's Lessee*, 6 *Pet.* 513. *Harris* v. *Elliot*, 10 *Id.* 25. *Adams* v. *Emerson*, 6 *Pick.* 57. *Perley* v. *Chandler*, 6 *Mass.* 454. *Chatham* v. *Brainard*, 11 *Conn. Rep.* 60. *Headlam* v. *Hedley*, 1 *Holt's Rep.* 465. *Grose* v. *West*, 7 *Taunt.* 39. *Goodtitle* v. *Alker*, *Burr.* 133. *And see Dovaston* v. *Payne*, 2 *Smith's Lead. Cas. Am. ed. and the cases there cited.*)

This being so, neither the town nor the state has power to give a right to individuals to use the land, only as a highway. All except this right of use by the public, remains in the owner, and can not be taken from him for private use, without his consent, or due process of law. (2 *Kent*, 340. *Taylor* v. *Porter*, 4 *Hill*, 140. *Stackpole* v. *Healy*, 16 *Mass.* 33. *Wilkinson* v. *Leland*, 2 *Pet.* 627, 655. *Holladay* v. *Marsh*, 3 *Wend.* 147. *Wells* v. *Howell*, 19 *John.* 385. 1 *Cowen's Rep.* 87, *note a.*) Depasturing land is no part of its use as a highway; and if the true construction of the statute is, that towns may license owners of cattle to turn them at large on to the highways for the purposes of grazing, I have no doubt it is so far unconstitutional and void. (*Const. art.* 1, § 6. 1 *R. S.* 341, § 9.)

Judgment affirmed.