Storks, C. J.
The defendant being the owner in fee of the land upon which the plaintiff's cow was depasturing, plainly had a lawful right to take and impound it, unless the plaintiff was justified in placing the cow there for the purpose of depasturing, by virtue, either of said land having been laid out for a highway, or of the license given to him for that purpose by the selectmen of the town of Southington, pursuant to the by-law authorizing them to grant such license. In regard to the first of those grounds of justification, it has not been strenuously relied upon by the plaintiff, and clearly can not be maintained. It is well established in this state, in conformity with the principles of the * *137 common law, that a highway is simply an easement or servitude, conferring upon the public only the right of passing over the land on which it is laid out, and, as an incident of such right, that of using the soil and the materials upon it in a reasonable manner for the purpose of making and repairing it. The title of the owner of the land is not extinguished, but is simply so qualified that it can only be enjoyed subject to the easement. He retains the fee, and all rights of property in the land not incompatible, with the public enjoyment’of the right of way, and whenever the highway is abandoned or lost, the entire, exclusive and unincumbered enjoyment reverts to him. Subject to this right of the public, he may take trees growing upon the land, occupy mines, sink water courses under it, and, generally, has a right to everj’’ use and profit which can be derived from it consistent with the easement, and when disseized, (as he may be,) can maintain ejectment, and recover the possession subject to the easement, and can also maintain trespass for any act done to the land not necessary for the enjoyment of the easement, which would be an actionable injury if the land was not covered bv a highway. (See Peck v. Smith, 1 Conn., 108, Wooster v. Butler, 13 id., 309, and Reed v. Leeds, 19 id., 182, and the authorities cited in the last case.) Among the rights thus retained by the owner is that of the herbage of the land, which belongs exclusively to him, and having himself thus the right to depasture it, he may maintain trespass against any one who puts his *cattle upon it to graze. The right, [ *168 ] on the part of the public, to depasture the land, is not necessary for the exercise of their right to pass over it; and the exercise of such a right on the part of the owner, is not inconsistent with this public right; the land is not, therefore, sequestered for that purpose when it is laid out as a highway, and no damages are given to the owner for the loss of any such right. If, therefore, it is used for such a purpose by a stranger, the owner of the land is remitted to the same rights which he possessed before the highway was made, and can protect himself against the annoyance by treating the intruder as a trespasser. In regard to the particular right of the owner exclusively to depasture the land, we have not, in our own state, any express decision. But it necessarily results from the principles which have been mentioned, and it has frequently been assumed by our courts that it is one of the rights of which the owner is not divested by the laying out of the highway; and it has been expressly decided in Massachusetts, Maine and New Hampshire, that it continues to belong exclusively to him. (Stackpole v. Healy, 16 Mass., 33. Cool v. Crommet, 13 Maine, 250. Avery *138 v. Maxwell, 4 N. Hamp., 36.) In the first of these cases this question is elaborately examined, and in delivering the opinion of the court, Putnam, J., says: “ It is not lawful therefore for the public to put their cattle into the highway to graze. For wherever one would justify taking the property of another in virtue of a license, or of a way, he must plead and prove that he pursued the authority, or used the way as a way, and not for any other purpose. [Citing Dovaston v. Payne, 2 H. Bla., 527.] So in 22 Edw. IV., 8 pl., 24, it was said by one of the court, that if one drive a herd of cattle along the highway, where trees or wheat or any, other kind of corn is growing, if one of the beasts take a parcel of the corn, if it be against the will of the driver, he may justify; for the law will intend that a man can not govern them at all times as he would ; but if he permitted them and continued them, &c., then it is otherwise.” But we consider the law on this point to be too clear to require that the subject be pursued further.
[ *169 ] *The other ground on which the plaintiff claims that he had a right to depasture the land of the defendant,,that is, that he was authorized to do so by the license of the selectmen of the town, depends upon the validity of the by-law of the town authorizing such license. It is claimed that that by-law is sanctioned by the act of 1855, “ To restrain horses, mules and cattle from running- at large; ” by -which it is provided that “ each town may permit [neat cattle] to go at large on highways and commons under such regulations as it may think proper.” [Stat. 1855, ch. lxiv., p. 78.] If the bylaw is not authorized by a just construction of the terms of that provision of the act, it of course does not protect the plaintiff. If, however, as we will suppose, it is authorized by that act, the question, and the one to which- the parties have principally turned our attention, arises, as to the constitutional power of the legislature to make that provision. This presents the general question, whether it is competent for the legislature to permit, or authorize towns to permit, the domestic animals of one person to depasture the land of another over which an ordinary highway has been located, and thus to deprive the owner of the herbage. , There has undoubtedly prevailed among our citizens, to a considerable extent, a vague impression that the legislature possessed this power; and many of the towns, assuming that it was constitutional, have passed by-laws similar to the one upon which the plaintiff relies. Such by-laws, we presume, have been generally passed in consideration of the benefit that would arise from them to the poorer classes of our community. But, notwithstanding the laudable motive which dictated their enactment, *139 the question of their validity now arises, for the first time, for our decision, and must be disposed of on legal principles. And, on a careful consideration of t'he subject, we are fully satisfied that the granting or authorizing such a license, no compensation having been in any manner provided for the owner of the land upon which it is to be exercised, is beyond the constitutional power of the legislature. It constitutes the taking of the property of one person *for the use, either of [ *170 ] another, or of the public. If of the former, it can not be done, either with or without compensation; if of the latter, it may be done, but only on providing compensation. These principles are now well settled. If, therefore, as has been already stated, the legislature, in the exercise of the power of eminent domain, when it authorizes the laying out of a highway, does not provide any compensation to the owner for the damage that he may sustain by the loss of the right to depasture his. land covered by such highway, it necessarily results that he has not been lawfully deprived of such right; although it might perhaps be competent for the legislature to provide that, when a highway is laid out, the whole title of the land covered by.it should be taken and vested in the state, and compensation be awarded to the owner accordingly, in which case perhaps it would be competent for the state to dispose of the herbage, or any other rights appertaining to the ownership of the land, in such manner as it should deem fit. On this latter point, however, it is unnecessary to give any opinion, as the highway over the defendant’s land is not claimed to have been laid out in any other than the ordinary mode. In this view of the question before us, which comprehends the whole argument upon the subject, we feel constrained to come to the conclusion, that if, by a fair construction of the act which has been mentioned, the provision of the by-law upon which the plaintiff relies is sanctioned, the act is unwarranted, so fai as it respects the rights of the defendant to the herbage of his land.
We find no decision elsewhere upon the precise point which we are considering, although in several cases the question has been incidentally glanced at, and in all of them the court has intimated a very strong doubt whether it is competent for the legislature to take away or qualify the right of the owner of land covered by a highway to its herbage, without compensation therefor. We would content ourselves with a reference merely to those cases. Holladay v. Marsh, 3 Wend., 142. Gidney v. Earl, 12 id. 98. *The Tonawanda R. [ *171 ] R. Co. v. Munger, 5 Denio, 255. White v. Scott, 4 Barb., 56. See also Bush v. Brainard, 1 Cow., 79, note, *140 and 1 Cowen’s Civil Jurisdiction of Justices of Peace, 415. In none of the cases, excepting Griffin v. Martin, (7 Barb., 297, has a different opinion been intimated. In that case, according to the view taken of it by the court, the question was not involved, and we do not perceive the force of the reasoning upon it by the learned judge giving the opinion of the court. The plaintiff has referred us to that case as an authority in his favor on the present question. It will, however, appear by an examination of it, that it was not decided upon the general ground that the owner of land covered by a highway, where only the right of the public to pass upon it was sequestered, and the damages assessed accordingly, was lawfully deprived of any use of his land consistent with such right of passage, and consequently to the right to the herbage, but upon the ground that, in the case then under consideration, the whole right and title of the owner should be deemed to have been sequestered for the highway and compensation made for it. It therefore has no application to the present case. We have been referred by the plaintiff to no other authority which bears upon the question. We are therefore of the opinion that the license given to the plaintiff was void.
We have considered the by-law under which the license was given, as if it were authorized by the statute to which we have referred. It is not necessary, however, for us to decide whether, by the true construction of that act, it authorized the by-law, or whether it does not embrace only such regulations, on the part of towns, in regard to animals going at large, as the welfare of the inhabitants might require, but which would not conflict with the rights of the owners of land covered by highways. Many regulations of that kind, of a most salutary nature, might be suggested, and we think that it was such only that the statute was meant to allow. At any rate, we ought to confine the construction of it to such regulations, if there is a fair doubt as to whether it intended any others.
£ *172 ] ■ *The superior court is therefore advised to render judgment for the defendant.
In this opinion-the other judges concurred, except Hinman, J., who did not sit in the case.
J udgment for the defendant advised.