## BLASHFIELD v. EMPIRE STATE TEL. & TEL. CO.

### (Supreme Court, Special Term, Cortland County. March 8, 1892.)

1. TELEPHONE LINE—CONSTRUCTION IN HIGHWAY—RIGHTS OF ABUTTERS.

The construction of a telephone line by the erection of poles and the placing of wires thereon, within the limits of a country highway, is an additional burden on. the fee, not contemplated in the original appropriation of the land for highway purposes, and the right so to construct such line must be by grant or condemnation. proceedings.

2. SAME—ACQUIESCENCE OF OWNERS.

The telephone company having constructed its line on the highway, without asking the consent of the adjoining owners, or seeking to acquire their rights by negotiation, on the assumption that it had the legal right to construct its line there, the adjoining owners are not estopped on the ground of acquiescence from setting up their rights in the premises.

3. CHAMPERTY.

The assignment of the causes of action of the several adjoining owners to one person, and the subsequent bringing of one action for the determination of the issues involved, was not open to the objection of champerty.

4. CONDUCT OF ATTORNEY—OFFICIOUS INTERMEDDLING.

The fact that plaintiff's attorney had advised the adjoining owners of their rights in the premises, and suggested an appropriate remedy for their disturbance, he not; having directly or indirectly purchased any of their claims for his client in violation of Code Civil Proc. §§ 73, 74, did not constitute officious intermeddling on his. part.

Action by H. Wilson Blashfield, assignee, against the Empire Telephone &. Telegraph Company. Judgment for plaintiff.

Before WILLIAM NOTTINGHAM, Esq., Referee.

*Franklin Pierce,* for plaintiff.    *Fred E. Storke,* for defendant.

NOTTINGHAM, R.   Recovery is sought by the plaintiff in this action upon. a number of assigned claims for damages alleged to have been sustained by the owners of the fee and persons in possession of premises running to the center of a public highway in the country by the erection and maintenance thereupon of a telephone line by the defendant. In the county of Cortland,. in the year 1884, poles were set and wires strung for a telephone from Glen Haven to Homer, through the village of Scott; and in 1887 from Preble to Homer; and in 1890 from Homer to Truxton. The Truxton line is conceded to have been constructed by the defendant. The Preble line was built for it. under a contract with one Weed. Upon the line from Glen Haven to Homer the wire was strung by the defendant, and some or all of the poles were furnished and set by private individuals, who were compensated by tickets issued by it, permitting the holder to send a number of messages over the line without charge. The route for these several telephone lines was selected and staked out by the defendant, and it has owned, maintained, and operated them since their completion. The plaintiff's assignors in most instances employed. the highway outside the beaten track for agricultural purposes, usually for the raising of hay. In the course of their construction, the sides of the highways on which these lines were built were entered upon, and holes dug in the soil, and poles six inches or more in thickness set therein, and afterwards. wires were strung, connecting the poles. In some cases the ornamental or shade trees, and in others fruit trees, within or near the limits of the highway were cut and damaged to a greater or less extent by the persons who were engaged in doing the work. It appears that such cutting was incidental to the construction of these several lines, and was necessary for the stringing. of the wires.

The principal question in this case, and the first one to be met and disposed. of, is whether or not the construction of a telephone line by the erection of poles and the placing of wires thereupon within the limits of a country highway constitutes an additional burden upon the fee of adjacent lands extend-

ing to its center, not contemplated or included in the original dedication or appropriation of the land for highway purposes. This is one of that large class of cases which the advance of civilization and the development of commercial intercourse bring forward for judicial determination. Its correct solution must depend upon the extent of the easement required by the public when the highway is laid out, since the title to the soil and all incidental rights and interests not included in that easement remain unimpaired in the owner of the fee, and are still his private property, preserved by the fundamental law from appropriation to public use without compensation, and to be protected by the same remedies as were theretofore available for that purpose. *Goodtitle* v. *Alker*, 1 Burrows, 133, 3 Kent, Comm. pp. 432, 433; *Williams* v. *Railroad Co.*, 16 N. Y. 97; *Craig* v. *Railroad Co.*, 39 N. Y. 404; *Gas-Light Co.* v. *Calkins*, 62 N. Y. 386; *Van Brunt* v. *Town of Flatbush*, 128 N. Y. 52, 55, 27 N. E. Rep. 973. These reserved interests and privileges include mines, quarries, springs of water, trees, earth, the right to drain, to mine, and to cultivate or employ the soil for any purpose not inconsistent with the public right of way, and for any unauthorized infringement of these the owner of the fee may maintain ejectment, trespass, or waste. *Jackson* v. *Hathaway*, 15 Johns. 447; *Cortelyou* v. *Van Brundt*, 2 Johns. 356, 363; *Gas-Light Co.* v. *Calkins, supra*. The interest of the public in the highway is limited to the right of passage and the taking of such timber and soil as are necessary for the maintenance of the road. In Vin. Abr. 4, 515, it is said that "in a highway the king shall have nothing but the passage for himself and his people." Both in England and in this country, and especially in our own state, this principle has, with slight modifications, found almost uniform approval. *Dovaston* v. *Payne*, 2 H. Bl. 527; *Goodtitle* v. *Alker, supra; Jackson* v. *Hathaway, supra; Cortelyou* v. *Van Brundt, supra; Livingston* v. *Mayor*, 8 Wend. 107; *Barclay* v. *Howell's Lessee*, 6 Pet. 513; *Adams* v. *Emerson*, 6 Pick. 57; *Chatham* v. *Brainerd*, 11 Conn. 60; *Van Brunt* v. *Town of Flatbush, supra*. In *Adams* v. *Rivers*, 11 Barb. 390, it was held that one who stood in the highway adjoining another's premises, and there used threatening and insulting language towards the owner, was guilty of trespass, in employing the highway for a purpose other than travel, and therefore unauthorized by law to him as one of the public. In the cases of *Griffin* v. *Martin*, 7 Barb. 297, and *Hardenburgh* v. *Lockwood*, 25 Barb. 9, the constitutionality of the statute of this state, since repealed, permitting the electors of towns to regulate the pasturage of the public highway, and to determine the manner and times in which horses, cattle, and sheep should be allowed to go at large therein, was questioned under the rule of law now under consideration as authorizing the appropriation of private property to public use without compensation. The statute was upheld, however,—in the former case by a divided court,—on the ground that the act itself was venerable in its origin, and that the custom of depasturing the highway had been exercised time out of mind; and therefore, when the land was appropriated to highway purposes, this right must be presumed to have been included in the easement acquired by the public, and the owner been compensated therefor. But the soundness of this principle was doubted by eminent jurists in this state, (SAVAGE, J., in *Holladay* v. *Marsh*, 3 Wend. 142, 147; BEARDSLEY, J., in *Railroad Co.* v. *Munger*, 5 Denio, 264; HAND, J., in *Griffin* v. *Martin, supra*; see, also, *Bush* v. *Brainard*, 1 Cow. 79, note;) and has been elsewhere distinctly repudiated, (*Woodruff* v. *Neal*, 28 Conn. 165; *Stackpole* v. *Healy*, 16 Mass. 33.)

Upon the introduction of steam railways the question of their right to occupy the highway with their tracks without compensation to the owner of the fee was early presented to the courts. It was strenuously urged in their behalf that the construction of their tracks upon the highway imposed no additional burden upon the land; simply used the public right of passage in a

proper, though unusual, method. But this view was not sanctioned, and it was held, on the contrary, that the laying of ties and tracks and the running of cars thereon propelled by steam-power was a use not contemplated when the land was taken for highway purposes, and was therefore the imposition of a new easement in addition to that acquired by the public, for which compensation must be paid to the owner of the fee. Later, when street railroads came into use as a means of transit, a distinction was attempted to be made in their favor between the use made by them of the highway and that made by railroads operated by steam-power, in that the grade of the street was not altered by the former, and the tracks were laid on a level with it, and did not interrupt or interfere in any way with travel thereupon, and that thus their operation was but an exercise of the public right of passage by another kind of conveyance than that usually employed. Although the above argument has some apparent plausibility, the court adopted the opposite view, and held the construction of a street railway to be an additional burden upon the fee, the right to impose which must be acquired by grant or condemnation. *Craig* v. *Railroad Co., supra.* In *Gas-Light Co.* v. *Calkins, supra,* it was decided that the laying of a gas-pipe along a country highway was likewise an additional burden upon the fee, and not included in the easement acquired by the public; and a distinction was made between such highways and city streets, with reference to which the court said: "And it may be remarked that most of the cases cited, if not all of them, state or assume that there is a distinction between the street of a city and a highway in the country. Every one of the improvements referred to may, in cities, be considered as a necessary incident to the public right to repair, improve, increase the value of property, and add to its beauty and the wealth of a large population. Usually constructed without objection, they do not ordinarily interfere with other rights which have been lawfully acquired and enjoyed, and they confer many advantages which counterbalance any supposed detriment or injury. Whether these rights can be strictly maintained as to cities it is not necessary to determine in this case. It is enough to say that the rule claimed has no application to a country highway, because the circumstances are entirely different. Nor does the rightful use of land appropriated for a street for the purposes before stated in any way disturb the position that a public highway in the country stands entirely upon a different footing." In the recent case of *Van Brunt* v. *Town of Flatbush, supra,* the principle and distinction above referred to are reiterated in the following language: "In the ordinary country highways of the state the public simply have an easement in the soil for traveling, and the maintenance of the highways for that purpose, and the soil in such highways cannot ordinarily be subjected to any other burden or easement without acquiring the right or consent of the owners of the soil. It is not necessary now to determine under what circumstances, if ever, the land in such highways can be subjected to other burdens or easements than those growing out of or connected with the necessities of public travel. The public easements in the streets of cities and villages are more extensive. In urban streets the public convenience and health and the general welfare require that the soil thereof should be subjected to greater burdens. They may be used for the laying of water and gas-pipes and the construction of sewers, and some other purposes. The public generally have an interest in and are benefited by such improvements, and they are necessities of modern life." It was held by the court of appeals in the above case, reversing the judgments below, that a sewer could not be built through a street of the town of Flatbush for the sole purpose of connecting a system of sewerage of an adjoining town with tide-water without compensation to the owners of the fee in said street; and that regardless of the fact whether the street in question was an urban street or a country highway, this trunk sewer being in no way directly beneficial to the adjacent land-owners or the inhab-

itants of the town through which it was proposed to construct it, they having
no right to connect with or drain into it, and it not being built for their health
or convenience.  Following the distinction before pointed out, it has been
decided that the owner of the fee extending to the center of the street is not
entitled to additional compensation on account of the erection therein of poles
for lighting the thoroughfares of a municipality by electricity.  *Johnson*
v. *Electric Co.*, (Sup.) 7 N. Y. Supp. 716; *Tuttle* v. *Brush*, 50 N. Y.
Super. Ct. 464; *Metropolitan Tel. & Tel. Co.* v. *Colwell Lead Co.*, Id. 488.
In the case first above cited it was said that it might well be doubted whether
the municipality could authorize the erection of electric light poles in the
street for supplying private consumers without compensation to the ad-
joining owner whose premises extended to the middle of the street.   In
the numerous elevated railway cases, with which, since the decision of the
*Story Case*, 90 N. Y. 122, the printed official reports have been crowded,
the conservatism of the courts of this state with reference to the constructive
enlargement of the public rights in the highway to the impairment of the re-
served rights of the adjoining owner finds ample illustration.   In them the
doctrine is announced and reiterated that, even where the fee of the street is
acquired by the public, still the adjacent owner whose land is bounded by its
outer line has in the street certain reserved rights to air, light, and free ac-
cess to his premises, which are his private property, and cannot be taken for
public use without just compensation.

In view of the authorities hereinbefore referred to and cited, it is difficult
to see how it can be successfully maintained that the construction of the tel-
ephone lines in question was a legitimate use of the road for highway pur-
poses, and imposed no additional burden upon the owners of the fee therein.
Unlike the city sewer, or the poles and wires set and strung for lighting urban
streets with electricity, the public benefit was not the paramount considera-
tion in their construction.   These telephone lines were not necessary to the
health or safety, or even devised for the especial and exclusive benefit, of the
communities through which they built.   Again, the use to which the land is
put by them is not by the remotest analogy a highway purpose.   Steam and
street railways employ the highway for the purposes of travel, which is the
main object of the easement itself; and in the case of the street railway no
appreciable obstruction is caused by its tracks to the public use of the right of
way.   The poles upon which these wires are strung are not placed in the por-
tion of the road actually used by the public, but outside the beaten track, and
upon the land which is or may be cultivated by the owner of the fee, and upon
and over which his reserved rights and privileges may be exercised and en-
joyed.   There would seem, therefore, to be much better reason for claiming
that an additional burden was imposed upon the land by a telephone or tele-
graph line than in the case of a street railway laying its tracks in the central
portion of the highway, which is never used by the adjoining owner except
for travel in common with the public.  · Moreover, if one line of poles can
lawfully be erected, there is no valid reason against a further or entire ap-
propriation to such purposes of the sides of the road to the total exclusion of
the adjoining proprietor from any enjoyment of the profits of the soil not used
by the traveling public.   Such an event was certainly not contemplated when
the land was first taken or appropriated for highway purposes, and therefore
this element was not considered in measuring the compensation received by
the owner.

It is insisted by the defendant that the damages are very inconsiderable, and
that the right to build their lines along the highways without compensating
adjoining owners has long been assumed and exercised by telegraph compa-
nies in this state, and ought not now to be questioned as against a kindred
corporation.   But the right of one person to enter upon the lands of another
does not depend upon the amount of damages there committed.   The maxim
*dè minimis non curat lex* has no application in matters of absolute right, and

cannot be invoked to warrant an unauthorized invasion of the property rights of another. Again, there is little cogency in these equitable considerations, and less reason that a right of way, which constitutes such a large item in the original expense of constructing in the case of other corporations of at least equal utility, should be acquired by telephone or telegraph companies absolutely free of cost. We conclude, therefore, that the construction of defendant's telephone lines did impose an additional burden upon the fee of the highway, for which the owner was entitled to compensation. *Dusenbury* v. *Telegraph Co.*, 11 Abb. N. C. 440; *Telegraph Co.* v. *Barnett*, 107 Ill. 508; *Broome* v. *Telegraph Co.*, 42 N. J. Eq. 141, 7 Atl. Rep. 851; *Stowers* v. *Telegraph Co.*, (Miss.) 9 South. Rep. 356; *Telegraph Co.* v. *Williams*, (Va.) 11 S. E. Rep. 106. We are aware that a contrary conclusion has been reached by the supreme courts of Massachusetts and Missouri. *Pierce* v. *Drew*, 136 Mass. 75; *State* v. *Railway Co.*, 86 Mo. 288. In each case the court was divided upon this question, and the decision rendered is opposed to the current of judicial opinion in this state, and arrived at by a course of reasoning which does not commend itself to us as sound.

Having determined that the construction of these telephone lines in question imposed upon the fee of the highway which remained in the adjoining owners a burden not included in the easement acquired by the public when it was laid out, it follows that the statute under which the defendant assumed to occupy the highway simply gives consent as far as the public is conserned, and confers no right to such occupation as against the owners of the fee. Such right must be acquired by grant or condemnation, and such acquisition must be made before the entry, as to the owners, is lawful. *Bloodgood* v. *Railroad Co.*, 18 Wend. 9; *Blodgett* v. *Railroad Co.*, 64 Barb. 580. There was no such acquiescence by the assignors of the plaintiff, generally speaking, in the construction of these telephone lines, as would avail as a defense to their conduct in an action in equity to compel the removal of the poles and wires. *Abendroth* v. *Railroad Co.*, 122 N. Y. 1, 25 N. E. Rep. 496; *Galway* v. *Railroad Co.*, 128 N. Y. 132, 28 N. E. Rep. 479. In some cases there was a protest by the assignors against placing the poles in the highway opposite their lands; in others, the entry was made in their absence; and in no instance was their consent asked, or any negotiation entered into, to acquire the right to enter and construct the line, but the defendant and its agents assumed that the law gave them the right to build it along the highway, both as against the public and the owners, and they acted accordingly.

Another question raised by the defendant in this case is that the transfer to the plaintiff of the several causes of action sued upon was in violation of the statutes against champerty. This claim is not sustained by the evidence. These assigned causes of action were many and severally small in amount. They were made more convenient of prosecution by the transfer to one person, and the subsequent bringing of a single action for the determination of the issues involved,—an event of which the defendant cannot justly complain, since the contesting of one action is far less burdensome to it then the defense of suits amounting to several score in number. The plaintiff's attorney was not directly or indirectly the purchaser of the claims, and his conduct in the premises was not in violation of section 73 or 74 of the Code of Civil Procedure.[1] *Allen* v. *Brown*, 44 N. Y. 228; *Sheridan* v. *Mayor*, 68 N. Y. 30;

---

[1] Code Civil Proc. § 73, provides that "an attorney or counselor shall not, directly or indirectly, buy, or be in any manner interested in buying, a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon."

Section 74 provides: "An attorney or counselor shall not, by himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action. But this section does not apply to an agreement between attorneys and counselors, or either, to divide between themselves the compensation to be received."

*Sussdorff* v. *Schmidt*, 55 N. Y. 325, (of opinion;) *Coughlin* v. *Railroad Co.*, 71 N. Y. 443; *Wetmore* v. *Hegeman*, 88 N. Y. 69; *Fowler* v. *Callan*, 102 N. Y. 395, 7 N. E. Rep. 169. It appears from the evidence that before the assignment of these claims to the plaintiff was made or contemplated the conduct of the defendant in constructing this line was a subject of complaint by various of the assignors, and the question of its right to do the acts complained of was a matter of inquiry and discussion among them and with others. Even were it assumed that this assignment was a combination upon their part in a united effort for the assertion of the common right, we do not regard that course as either illegal or unjustifiable. From what source the suggestion of this plan may have first proceeded is not very clear in this case, and is scarcely material. It cannot be called officious intermeddling on the part of an attorney or anybody else to inform an injured party that an act to which he has submitted under protest or in ignorance of his rights is, in his judgment, a violation of law; and the remedy for such wrong it is the peculiar function of the attorney to suggest; and the fact that such suggestion may have been given either upon inquiry, or even of his own motion, cannot be made the subject of just criticism, or even be properly denominated as the stirring up of strife. The contracts between the plaintiff and his attorney provide simply for a contingent fee in compensation for the legal services performed, and no agreement was made by the attorney to pay the costs and expenses of the litigation. Our conclusion is, therefore, that the plaintiff in this action is entitled to recover the damages actually sustained by the erection and maintenance of the defendant's lines along the highways in question. In order to ascertain more satisfactorily the damage to the use or rental value of the premises of the several assignors residing along the line from Glen Haven to Homer and Homer to Preble it was agreed by the parties that the referee should make a personal inspection of these lines, which was done by him in company with the attorneys for the respective parties. Findings may be prepared by the plaintiff's attorney in accordance with this opinion, and with the schedule of damages allowed delivered to him by the referee.