ALBANY,
August, 1807.

Barker.
v.
Cheriot.

[* 352]

## Barker *against* Cheriot.

A vessel was chartered for a voyage from New-York to Martinique & back to New-York, for the entire sum of 4,500 dollars, which was to be paid in sixty days after the delivery of the return cargo it New-York. The

THIS was an action of *assumpsit.* The cause was tried at the *New-York* Sittings, on the 31st *December*, 1806, before Mr. Justice *Livingston.*

On the 24th *January*, 1805, the plaintiff let the ship *Mary* to freight, to the defendant, for a voyage from *New-York* to *Martinique* and back to *New-York*, and a charter party, in the usual form, was executed by the parties. The defendant covenanted to pay for the freight or hire of the vessel for the entire voyage, the sum of four thou-

vessel delivered the outward cargo at Martinique; and while on her voyage home with a return cargo on board, was captured by a British cruiser and carried into Antigua, where the cargo was libelled in the Admiralty Court, and the judge ordere d the cargo to be retained for further proof, subject to a lien for freight, according to the charter party. The vessel returned to New-York without the goods, except a few articles left on board. The goods were appraised by order of the Admiralty Court, and afterwards, on producing further proof, were ordered to be restored to the claimants : but neither the goods nor the proceeds ever came to the hands of the owners or insurers, who had paid as for a total loss. In an action brought by the ship-owner for freight; it was held that no freight was due.

sand five hundred dollars, for which he was to give a note,
payable in sixty days after delivery of the return cargo in
the port of *New-York*.

The ship sailed from *New-York* on her voyage, the 17th *February*, 1805, with a full cargo, and arrived at
*Martinique* the 23d *March* following, where her outward
cargo was delivered in good order to the defendant.   A
return cargo was shipped on board by the defendant, with
which the ship set sail from *Martinique*, on the 24th
*April*, bound for *New-York*.   On the next day she was
captured by a *British* cruiser and carried into *Antigua*,
where the cargo was libelled in the Admiralty Court   Af-
ter a hearing of the cause, the judge ordered the cargo to
be retained for further proof, subject to a lien for the
freight mentioned in the charter party.   On the 24th
*June*, 1805, the captain sailed from *Antigua* with the ship,
having on board a [*]small part of the return cargo, [* 353]
to wit, two   barrels and seven boxes of sweetmeats,
of the value of 220 dollars, and which had been left
on board at *Antigua*.   On the arrival of the ship at *New-
York*, the few articles on board were offered to the de-
fendant, who refused to receive them, and they were ta-
ken possession of by the officers of the custom house.

The cargo at *Antigua*, on the 20th *May*, 1805, was ap-
praised, pursuant to an order of the Court of Admiralty,
at the sum of 11,500*l. Antigua* currency.   The principal
part of the cargo was left with the agents of the captors,
and the residue with one *Dow*, in consequence of some ar-
rangement among themselves, without giving any securi-
ty for the appraised value.   *Dow* was a stranger to the
defendant, but was appointed by the master, as agent to
prosecute the claim.   Before further proofs were pro-
duced, or a final sentence pronounced, the goods were
sold by the agents of the captors and *Dow*, and the pro-
ceeds received by them, and converted to their own use.
No part of the proceeds were ever received by the de-

fendant or his insurers. The United Insurance Company insured $20,030, on the cargo, for the defendant. In the policy was a clause, "in case of capture or detention, not to abandon in less than four months after advice thereof, or till after condemnation." The Commercial Insurance Company insured 8,000 dollars. with a similar clause in the policy, fixing the time of abandonment at six months. The Marine Insurance Company also insured 12,000 dollars, with a warranty " free from any charge arising from any detention by the *British.*" Abandonments were duly made to all the Insurance Companies, and the two first paid a total loss.

On the 2d *November*, 1805, further proof having been produced, the Court of Admiralty, at *Antigua*, decreed a restoration of the property to the claimant.

On the trial of the cause, the plaintiff offered to read the deposition of the captain, which was objected to, but it was read, reserving the question as to its admissibility. The [*]writ was issued in the cause, on the 27th *July*, 1805, and the defendant arrested on the same day. After the arrest on the same day, an order was granted by the recorder of *New-York*, for the examination of the captain, on the usual affidavit, and his deposition was taken on the same day, after giving four hours' notice to the defendant, served with a copy of the order.

[* 354]

A verdict was taken for the plaintiff for the whole amount of freight, mentioned in the charter party, subject to the opinion of the court, on a case, containing the above facts ; and it was agreed, that if the court should be of opinion, that the plaintiff was entitled to recover, judgment should be rendered for such sum as they should direct : but if the court should be of opinion against the plaintiff, then a judgment of nonsuit was to be entered : And either party was to be at liberty to turn the case into a special verdict.

The case was argued, at the last term, by *Boyd* and *Harison*, for the plaintiff, and *Hoffman* and *J. Radcliff*, for the defendant.

*Boyd* and *Harison*. 1. As to the admissibility of the deposition. The issuing of the writ, and the arrest of the defendant, must be considered as the comencement of the suit. There was a suit pending between the parties. The defendant might have compelled the sheriff to return the writ, and the plaintiff to proceed in the cause, or be nonsuited. Not to allow depositions to be taken, *de bene esse*, in such cases, would often produce great inconvenience and injury to parties. If the point of practice is not already established in this court, it is important that it should be settled. 2. The principal question in this case is, whether the plaintiff is entitled to recover freight, and how much. Where the execution of the contract is prevented by an accident of superior force, before the departure of the vessel, the charter party is dissolved without damage to either party.* In that case there can be no apportionment of freight : but where the voyage is in part performed, and the freight can be apportioned, there is no [*]reason why the party should not be compensated for what he has performed. Here were two distinct voyages, out and home, with two distinct cargoes, one of which was delivered to the consignee of the defendant. There was a real and essential service performed by the delivery of the outward cargo, and the plaintiff has an equitable claim to compensation. Considering this not as a case of mere interruption, or an embargo, but as one in which the *charter party* has been dissolved, by an accident of superior force, the plaintiff becomes entitled to a *pro rata* freight.* The defendant was not bound to wait the chance of the property being restored. It is not like the case of an embargo. To oblige the ship-owner to wait the event of a decision in cases of capture would prove ruinous to ship-owners.

ALBANY, August, 1807.

Barker.
v.
Cheriot.

* *Pothier, Charte Partie*, 98.

[* 355]

* *Post & Russel v. Robertson*, 1 Jchnson, 24. But see *Scott v. Libby & others ante*, p. 336.

Hoffman and *J. Radcliff*, contra. 1. As to the deposition. The defendant was not bound to appear until the return of the writ; until his appearance, he was not obliged to do any act, and it cannot be said that any suit was pending until the return of the writ. 2. It seems to be conceded by the other side, that no action will lie on the *charter party*. The decision in the case of *Post* and *Russel* v. *Robertson*, establishes the principle, that no *pro rata* freight is due, unless the cargo is accepted by the owner at an intermediate port.[†] Here has been no acceptance of the goods; the recovery in the Admiralty court does not amount to an acceptance; and it is stated in the case, that the proceeds never came into the hands of the defendant. The defendant lost his goods, though he afterwards recovered the value of the insurers. As the goods were not received, there can be no *implied assumpsit* to pay the freight. The plaintiff cannot recover unless the court substitute a new contract, in the place of the one already made between the parties, by which the payment of freight is made to depend on the delivery of the return cargo. Where the contract is dissolved by superior force, each party must abide by the event.[‡] The capture and detention, in this case, can be considered in no other light than as an *interruption* of the voyage, and if the ship-owner meant to [*] earn his freight, it was his duty to wait the result, and bring on the cargo in case of its liberation.[*] By leaving the goods at *Antigua*, the plaintiff put an end to the contract, and waived all right to freight.

THOMPSON, J. This was *one entire voyage* from *New York* to *Martinique*, and back again; and as the vessel was captured upon her return, and did not deliver her return cargo, no freight is due, notwithstanding the defendant may have had the benefit of the outward voyage, because, by the express agreement of the parties, the outward and homeward voyage were one, and the

† See *ante*, p. 325—336.

‡ *Abbot*, 339. 1 *Valin, Com.* 827. *Pothier, Charte Partie*, 96.

[* 356]

* *Hadley* v. *Clarke and others*, 3 Term 259. *Pothier Charte Partie*, 100. 1 *Beawes*, 135. *Abbot*, 239.

profit depended upon the entire performance. This rule is too well settled to admit of being questioned. (*Abbot*, 265. 269.) Here has been no acceptance of the cargo, so as to make the defendant liable for a *pro rata* freight.† The master ought to have waited at *Antigua* for the removal of the detention of the cargo, especially as he would have been entitled, on an eventual condemnation, to his freight from the captor; for the Court of Vice Admiralty admitted his lien for freight. (*Pothier*, *Chart Partie, No.* 100. 1 *Beawes*, 136.) The defendant would, therefore, be entitled to judgment; but, according to the provision in the case, we can only direct a judgment of nonsuit to be entered.

KENT. Ch. J. was of the same opinion.

SPENCER, J. not having heard the argument, gave no opinion.

Judgment of nonsuit.