Littlefield v. Maxwell.

LITTLEFIELD *versus* MAXWELL.

*Easements,* in another's land, may be acquired by prescription, either by communities or individuals.

Easements, so acquired, are, in legal intendment, *without profit.*

A custom is local; it is alleged, not of persons, but of a place.

If one would prescribe for a *profit a prendre in alieno solo,* he must allege it in a *que estate*; in other words, if one would prescribe for such a right, in another's soil, as authorizes the taking or having what is, by legal intendment, a profit therein, he must allege it as pertaining to some specified lot of land, owned by himself, and that he and all those, *whose estate* he has in the land, have from time immemorial, exercised the right which he now claims.

A *custom* to take or have a *profit* in another's land, is bad.

To use another's land for piling and lodging wood upon it, is to take a *profit* in it.

A *custom,* so to use it, cannot be sustained.

TRESPASS QUARE CLAUSUM, for piling 300 cords of wood upon the plaintiff's land, described in the declaration. The defendant by brief statement pleaded : —

1st. That the inhabitants of the town of Wells, for more than 20 years, have claimed and exercised the right to haul and pile wood thereon, for the purpose of sale and shipping;

and that defendant is an inhabitant of Wells and hauled and piled his wood for that purpose.

2d. That the inhabitants of said town of Wells for more than 20 years have had a custom to pile wood thereon, for sale or shipping, at their free will and pleasure.

3d. That the inhabitants of Wells and all other persons in the neighboring towns, who have had occasion to haul wood there, for the purpose of sale or shipping, or to haul sea-weed or manure from the sea-shore adjacent thereto, from time immemorial have had a custom to haul and pile wood or sea-weed, or other things thereon, at their free will and pleasure, as a common landing place.

It was agreed that the defendant piled wood, as alleged in the plaintiff's declaration, upon the space described in the brief statement, which is a ridge composed of sand, gravel and stones, thrown up by the action of the sea along the front of the plaintiff's lot, forming a sea-wall, and above ordinary high water mark, but below extraordinary high water mark.

The defendant then introduced testimony, tending to prove, and offered to prove, that, from the year 1819 up to the date of the plaintiff's writ, such inhabitants of the town of Wells, and such individuals belonging to the neighboring towns, as pleased, had been accustomed to haul and pile wood upon the space described in the brief statement, under a claim of right, and without any objection or claim for compensation on the part of David Maxwell, who was all that time owner of the plaintiff's lot ; that very many of said inhabitants and others had been accustomed yearly, and at all times, to deposit wood on said space; that the quantity piled on said space was comparatively small for the first few years, from 75 to 100 cords, but gradually increased from year to year, till, on some occasions, there has been nearly 2000 cords at a time, most of which was on this space ; that, during that time, it has been customary for vessels to be brought up in front of this lot, or a lot adjacent thereto, to be loaded with the wood ; that in piling the wood, each individual piled on any part of the space, he thought proper, if not previously occupied ; that it has

been customary to pile upon all parts of the space; and that since 1819 the space has at many times been nearly covered with piles of wood and sea-weed.

The Judge excluded the testimony.

The cause was then submitted to the decision of the court upon the admissibility or sufficiency of the testimony so offered and excluded. If the testimony offered and excluded would, in law, be sufficient to prove the right, claimed by the defendant, a new trial is to be granted; otherwise the defendant is to be defaulted.

*Bourne,* for plaintiff.

The matters pleaded constitute no valid answer to the action. It is against public policy to sustain such a defence. The title is settled by the Colonial ordinance of 1641. The case of *Storer* v. *Freeman,* 6 Mass. 435, was but a republication of the same principle. An invasion of such titles would lead to endless litigation. Prescription is of incorporeal hereditaments only. To establish it, the possession must be adverse, unexplained and exclusive.

The easement here claimed is not incorporeal. The claim would destroy all beneficial use of the land by its owner. Profit *a prendre* in another's land cannot be prescribed for. *Pearsall* v. *Post,* 20 Wend. 124. Such a custom cannot be prescribed for.

User must be *adverse.* The plaintiff's land was vacant, never fenced and never can be.

How adverse? As the plaintiff could make no use of it, no negligence can be imputed to him. The assent of the owner must be presumed, and *volenti non fit injuria.* Therefore there can be no presumption of a grant. *Donnel* v. *Clark,* 19 Maine, 183; *Nelson* v. *Butterfield,* 21 Maine, 234; *Greene* v. *Chelsea,* 24 Pick. 80; *First Parish in Gloucester* v. *Beach,* 2 Pick. 60; *Thomas* v. *Marshfield,* 13 Pick. 249.

It is a sufficient answer to the whole defence, that the plaintiff used this land just as every other owner of the same kind of land, uses his own.

No prescriptive right to the shore has been acquired in New England.

User must be *unexplained.* Can there be any difficulty in explaining the user, or in accounting for the conduct of the plaintiff?

The Revised Statutes annul the doctrine of prescription. No limitation can operate here. The action is trespass, and our possession as well as our grantor's has never been lost. *Bethum* v. *Turner,* 1 Greenl. 111; *Greene* v. *Chelsea,* 24 Pick. 80.

The inhabitants of a town cannot gain such a right by custom or prescription. *Waters* v. *Lilly,* 4 Pick. 145; *Gateward's case,* 6 Coke, 60; *Pearsall* v. *Port,* 20 Wendell, 128; *Bethum* v. *Turner,* 1 Greenl. 111.

There could be no certain grantee to take, and none to discharge the easement. A perpetuity would be created which our law does not allow.

The cases reported, excepting *Coolidge* v. *Learned,* which is denied to be law, and is unsustained by authority, have reference to individual claims or privileges. The Revised Statutes refer to individual claims only. The provision in chap. 147, was not intended to create or give any such rights as are mentioned in it, but to prevent their future acquisition, without conforming to certain requirements. *Pierre* v. *Furnald,* 26 Maine, 437. It requires possession to be exclusive. Here the plaintiff has been in possession, at all times. The plea itself avers, that he is one of those in possession.

To prevent a prescription, the statute requires certain notice to be given to those, who are using the plaintiff's land. How could notice be given in a case of this kind? Who are the persons to be notified? Who are the certain other inhabitants of the neighboring towns?

Prescription, if admitted, must be limited to forty years, in analogy to the act of limitations of 1848.

*Eastman,* for defendant.

I. *Custom* is *unwritten law,* and respects *place,* as *prescrip-*

*tion* respects *persons.* Dane, ch. 26, art. 1, and · cases there cited. Sup. Dane, ch. 26, art. 6, § 23; ch. 26, art. 2, and cases there cited; *Grimstead* v. *Marlow,* 4 Term R. 717.

*Customs* and *prescriptions* are the same, as to *origin, continuance* and *time.* Dane, ch. 79, art. 3, § 19.

1. As to *time immemorial.* Limitation of a writ of right, twenty years. A regular use of twenty years, unexplained, and uncontradicted, is sufficient to warrant a jury in finding the existence of *immemorial custom.* Sup. Dane, ch. 26. art. 6, § 23; *King* v. *Joliffe,* 2 Barn. & Cres., 54 to 64; *Tyler* v. *Wilkinson,* 4 Mason, 402, and cases there cited.

2. This custom was *continued.* From 1819 to 1846, when the plaintiff's title accrued.

3. It was *peaceable* and acquiesced in; not disputed at law or otherwise; for customs owe their origin to *common consent.* This was so. Plaintiff's grantor was the owner the whole time; he had knowledge of the use; was in a situation to enforce his claim or resist the use, and did not.

4. It was a *reasonable* custom. The *locus* was useful for this ·purpose and nothing else. It was needed for this, by all the inhabitants of Wells, and not needed by the plaintiff or his grantor exclusively.

5. It was sufficiently known and certain, as to the persons claiming and the thing claimed.

6. It was *compulsory,* under a claim of right. No leave or license was ever asked of, or given by, plaintiff's grantor.

7. That others have used the *locus* as a piling place, does not impair the rights of the inhabitants of Wells.

8. The *place* need not be limited by town lines. It may embrace a section of country, engaged in that particular business. *Conante ratione legis, curat lex.*

II. The public may acquire this right, in the same way as they may acquire a right of way, or a right to the use of a river not navigable, by an uninterrupted usage of twenty years. *Berry* v. *Carle,* 3 Greenl. 269, and cases there cited. *Shaw* v. *Crawford,* 10 Johns. 236; *Perley* v. *Chandler,* 6 Mass. 454; *Coolidge* v. *Learned,* 8 Pick. 504.

What was at first only a *local* custom, may by long use, have become a *general* custom.

WELLS, J. — The *locus in quo* lies above the ordinary high water mark of the sea, but below the extraordinary high water mark, and according to the principles of the common law, the title to it is in the plaintiff.

Sir Matthew Hale, in his treatise, *de jure maris*, chap. 6, speaking of the sea-shore, says, it is certain that that, which the sea overflows either at high spring tides or at extraordinary tides, comes not, as to this purpose, under the denomination of *littus maris*, and consequently the king's title is not of that large extent, but only to land that is usually overflowed at ordinary tides.

The defendant alleges in his brief statement, that the inhabitants of the town of Wells, for more than twenty years, have claimed and exercised the right to haul and pile wood on the premises described in the plaintiff's declaration, for the purposes of sale and shipping, and that the defendant is an inhabitant of that town, and hauled and piled his wood for that purpose ; that the said inhabitants for the same time, have had a custom to pile wood thereon for sale or shipping, at their free will and pleasure, and that said inhabitants and all other persons in the neighboring towns, have had a custom to do the same acts, and also to haul sea-weed or manure from the sea-shore adjacent thereto, and to pile the same and other things thereon, at their free will and pleasure, from time immemorial, as a common landing place.

The question presented is, whether the inhabitants of one or more towns, can claim the right or custom by a long use of more than twenty years, to deposit wood upon the plaintiff's land.

In the case of *Bethum* v. *Turner*, 1 Greenl. 111, the usage of depositing lumber on the landing place, had continued for more than thirty-five years, but without any claim of title, except what might arise from the fact of occupation, and such usage was not considered sufficient to establish the right. In

the present case, the defendant offered to prove, that the acts alleged to have been done in the brief statement, were accompanied by a claim of right, and with the knowledge of the owners.   That case, although like this in many respects, cannot be considered as an authority directly in point.

In *Gateward's case*, 6 Coke's Rep. 60, the defendant justified by a plea of a right of common for depasturing in the plaintiff's close, for all the inhabitants of the village of Stixwold.   And it was held that the custom was bad, and that there was a difference between an interest or profit to be taken or had in another's soil, and an easement in another's soil, that a custom for every inhabitant to have a way to church or market is good, for it is but an easement and no profit.

In *Grimstead* v. *Marlow*, 4 T. R. 717, the defendant justified under a custom, that every inhabitant, dwelling in any ancient messuage within the parish of Leatherhead, from time whereof, &c., hath used to have common of pasture in the common meadow.   Lord Kenyon said, there may be a custom for an easement, as a right of way, in *alieno solo*, but for a profit *a prendre*, the party must prescribe in a *que estate*, and he cites *Gateward's case*, and the case of *Hardy* v. *Hollyday*, a note of which was read by BULLER, J.

*Waters* v. *Lilly*, 4 Pick. 145, was trespass for taking fish in the plaintiff's close, and the defendant offered to prove, that the inhabitants of the vicinity had from time immemorial taken fish in the plaintiff's pond, which was an enlargement of a natural stream by a dam.   But it was decided that the custom proposed to be proved, is not one that could be sustained in law, for a custom to take any thing from another's land, or for a profit *a prendre*, is not a lawful custom, and that such, if available at all, must be set up by prescription as belonging to some estate, and should be pleaded with a *que estate*.

In the case of *Perley* v. *Langley*, 7 N. H. 233, it is said, that it is not essential that such rights be prescribed for in a *que estate*, as holden in the language of 4 T. R. 717 ; for all rights that can be sustained by prescription, can be prescribed for in a man and his ancestors.   But it is further said, that

the inhabitants of a town, as such, or the inhabitants of the ancient houses of a town, cannot claim a right of common, or other profit, in *alieno solo*, as a custom, for the inhabitants may not have the inheritance, and that there are no authorities that sustain the removal of the soil, or the taking of profits, from the soil of another, as a custom.

In *Pearsall* v. *Post*, 20 Wend. 111, and the same case, 22 Wend. 425, where the question under consideration was very fully examined, it was decided that the public have not the right, against the will of the owner, to use and occupy his soil, adjoining navigable waters, as a public landing and place of deposit of property, in its transit to and from vessels navigating such waters, although such user has been continued upwards of twenty years with the knowledge of the owner.

The principle to be extracted from the cases cited, is, that a custom for an interest or profit to be taken or had in another's soil, is bad, and that such right must be alleged by prescription in a *que estate*. In the case of *Perley* v. *Langley*, it is said, that such claim may be sustained as a prescription by the individual through his ancestors, while the other cases maintain that there must be a dominant as well as a servient estate.

A custom is local, and is alleged in no person, but laid within some manor or other place. Coke Litt. 114, a.

There are many easements for which a man may prescribe as having been exercised by him and his ancestors, or by a body politic and their predecessors, without profit, as a way through another's land, a sink and the like. 3 Cruise, title 31, chap. 1, § 21.

The public as well as an individual, may acquire a right of way by an adverse use of the same, but in this State, a *user* of twenty years is required. *Rowell* v. *Montville*, 4 Greenl. 270; *Estes* v. *Troy*, 5 Greenl. 368.

But such right is not considered a profit *in alieno solo*. It is the mere right of passing and repassing; the title to the land, and all the profits to be derived from it, consistently

with the right of way, remain in the owner of the soil. *Stackpole* v. *Healy*, 16 Mass. 33.

The case of *Coolidge* v. *Learned*, 8 Pick. 504, more fully sustains the right claimed by the defendant than any other, which has been examined. The facts of that case are not very fully stated, and the second plea appears to place the right upon the use of the landing for boards and timber in their transit to and from the river, more like a right of way, than that of piling and depositing timber upon the *locus in quo*. But the court recognize the right as one belonging to the public as well as the inhabitants of Watertown, and if it were a landing place, a place of deposit, the case would not be in harmony with that of *Pearsall* v. *Post*.

But is the right claimed by the defendant a profit *in alieno solo?* The premises mentioned in the declaration, consist of two and half acres. The defendant offered to prove that the inhabitants of Wells and others, had been accustomed to deposit wood upon them at all times, that the quantity piled upon the land was nearly two thousand cords at a time, that vessels were loaded from the front of the lot, with the wood, that each individual piled on any part of the land he thought proper, if not previously occupied, that it had been customary to pile upon all parts of it, and that since 1819, it had at many times been nearly covered with piles of wood and sea-weed.

Such a use of another's land, must be considered as a profitable one, arising to those who exercise it. It is not a claim to carry any thing away from the soil, but the direct and continual appropriation of it for the purposes of gain. Indeed it appears to go beyond a mere incorporeal right, and in the full extent of its exercise to claim the entire dominion of the land, so as to deprive the owner of any benefit from it.

In the case *Cortelyou* v. *Van Brundt*, 2 Johns. 356, the defendant claimed a right by prescription to erect a temporary hut for the purposes of fishing, upon the plaintiff's land. But it was denied, by Thompson, J. that prescription would in any case give a right to erect a building on another's land. He says, it is a mark of title and of exclusive enjoyment, that

title to land requires the higher evidence of corporeal seizin and inheritance, and that prescription applies only to incorporeal hereditaments.

The right of erecting a hut for temporary purposes, would not seem to be any more corporeal in its character, than the right of piling wood upon the land, to remain as long as might suit the pleasure of the owner.

But without deciding, that the claim set up by the defendant for himself and others, is an entire usurpation of the fee, and should be tried by the rules of limitation applicable to a claim of title, by a corporeal adverse seizin, it is enough for the decision of the case, to say, that the claim is certainly one of an interest or profit in the soil, and brings it within the rule that such a claim cannot be sustained by custom, and a

*Default must be entered.*