## Case No. 3,980.

### DONAHOE et al. v. KETTELL et al.

### [1 Cliff. 135.] [1]

Circuit Court, D. Massachusetts.   Oct. Term, 1858.[2]

SHIPPING—CHARTER-PARTY — WHEN A DEMISE OF THE VESSEL AND WHEN A CONTRACT OF AFFREIGHTMENT—WHO ARE CARRIERS — RIGHT TO CHARTER MONEY—CONSTRUCTION OF CONTRACTS.

1. By the terms of a charter-party, the owners engaged that the vessel during the voyage should be kept sea-worthy, and should be furnished with necessary men and provisions, and that the whole of the vessel under the deck, with the exception of the cabin, accommodations for the men, and storage of sails and provisions, should be at the sole use and disposal of the charterers during the voyage. Held, that the instrument was a contract of affreightment, and not a demise of the vessel.

[Cited in Shaw v. U. S., 93 U. S. 241; The T. A. Goddard, 12 Fed. 178.]

2. When a charter-party of affreightment operates as a demise or bailment of the ship to the charterer, he becomes the carrier of the goods shipped on board; and in case the vessel is employed by him as a general ship for the conveyance of merchandise, the master is his servant while procuring freight and contracting with third parties for the carriage of merchandise, and not the agent of the owners of the vessel; and the latter, consequently, cannot be made responsible for the loss of the goods shipped on board, or for injury to the same under such contracts. But when the charter-party operates merely as a contract between the charterer and the ship-owner for the conveyance, by the latter, of goods and merchandise to be shipped on board by the charterer, the owners of the vessel are the carriers of the goods, and will in general be responsible to the charterer for the non-conveyance of them, according to their contract.

[Cited in Reed v. U. S., 11 Wall. (78 U. S.) 601; Richardson v. Winsor, Case No. 11,795; Leary v. U. S., 14 Wall. (81 U. S.) 611; Hagar v. Clark, 78 N. Y. 50.]

3. Where the language of a contract is plain and clear, it must be understood that the parties mean what they have plainly expressed; but if, from a view of the whole instrument, the evident intention of the parties is different from the literal import of the terms employed to express their intention in a particular part of the instrument, that intention should prevail, notwithstanding it should appear to be inconsistent with such particular part, because the construction of the contract ought not to depend upon any formal arrangement of words, but should be collected from every part of the same as applied to the subject-matter to which it relates.

4. In this case the vessel was chartered for a voyage from Boston to Port au Prince, and back to Boston,—the charterer agreeing to pay a round sum for the voyage, all foreign port charges, pilotage, and lighterage, and to advance at the outward port only what the master might require for the disbursements of the vessel, not to exceed one half the charter. These advances having been made, and the voyage not completed, no proportionate part of the charter money was due the owners, or could be received by them from the charterers.

[Appeal from the district court of the United States for the district of Massachusetts.]

The respondents [John B. Kettell and others] chartered the brig Erie, at Boston, for a voyage to Port au Prince and back to Boston. By the terms of the charter-party, the whole of the vessel under the deck, with exception of the cabin, and necessary room for the crew, and storage of the sails, cables, and provisions, was to be at the disposal of the respondents, and no merchandise was to be laden on board except for them; they were to pay eighteen hundred dollars for the charter, as well as all foreign port charges, pilotage, and lighterage, and agreed to advance the master what money he might require to disburse his vessel at Port au Prince, not to exceed half the charter.

The owners [Cornelius Donahoe and others] covenanted to keep the vessel stanch, well fitted, tackled, manned, and provisioned for the voyage. Stipulations were also inserted in the charter-party, allowing a certain number of running lay-days, for discharging and loading the vessel at the outward port, and reasonable time for the same purpose at Boston, and also providing that the respondents should pay a specified demurrage in case the detention of the vessel should happen through their default or that of their agent.

The brig sailed from Boston on the 25th of October, 1856, arrived at Port au Prince, safely delivered her outward cargo, and took in full cargo for return, but on the homeward voyage was totally lost by a peril of the sea. A libel in personam was filed by the owners in the district court to recover the stipulated sum for the hire of the vessel. A decree was entered in favor of the libellants for the sum of nine hundred and eight

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Reversing The Erie, Case No. 4,512.]

dollars and eighty-four cents damages, with costs of suit. [Case No. 4,512.]

William Brigham, for appellants.

The contract is not a letting of the ship, but a contract of affreightment. This is evident from the whole contract. The vessel was under the control of the owners, who appointed the master and crew, and only the parts of the vessel destined for the taking of freight were under the control of respondents. They were required to load within a limited time. The contract provides for a round sum for freight; the only question, therefore, is, whether the contract was entire or divisible.

The language of the charter-party indicates but one voyage, viz. "from Boston to Port au Prince and back to Boston." The respondents agree to pay for the voyage $1,800, when completed, unless required to make advances to disburse the vessel at Port au Prince.

There is no case in law or admiralty which has held that a contract of this kind can be divided. Barker v. Cheviot, 2 Johns. 352; Penoyer v. Hallett, 15 Johns. 332; Blanchard v. Bucknam, 3 Greenl. 1; Hamilton v. Warfield, 2 Gill & J. 486; Towle v. Kettell, 5 Cush. 18.

There is good reason for the rule. Libellants could have insured their freight, but respondents could not thus have protected themselves.

F. E. Parker, for libellants.

CLIFFORD, Circuit Justice. Three grounds are assumed by the counsel of the libellants in support of the claim set up in the libel. In the first place, he insists that the charter-party in this case is a letting of the vessel, and not a contract of affreightment. He contends, in the second place, that if the contract is a letting of the vessel, her loss only exempts the charterers from their obligation to return her, but not from the payment of the freight. Thirdly, it is insisted that, if the contract is one of affreightment, still the libellants can recover a proportion of the charter money for the outward voyage, on the ground that the contract is divisible both at common law and in the admiralty. All of these propositions, or certainly the first and third, are denied by the counsel of the respondents, and they present the principal matters to be determined at the present time.

Whether the charter-party in this case is a letting of the ship or a contract of affreightment must depend upon its terms and conditions. Upon that subject the rule is, as established by the supreme court, that a person may be the owner for the voyage, who, by a contract with the general owner, hires the ship for the voyage, and has the exclusive possession, command, and navigation of the ship. But where the general owner retains the possession and navigation of the ship, and contracts to carry a cargo on freight for the voyage, the charter-party is considered as a mere affreightment sounding in covenant, and the freighter is not clothed with the character or legal responsibility of ownership. In the first case the general freighter is responsible for the conduct of the master and mariners during the voyage, while in the latter case that responsibility rests on the general owner. Marcardier v. The Chesapeake Ins. Co., 8 Cranch [12 U. S.] 39; Hooe v. Groverman, 1 Cranch [5 U. S.] 214. There are two kinds of contracts, says Judge Ware, passing under the general name of "charter-party," differing from each other very widely in their natures, their provisions, and in their legal effect. In one the owner lets the use of the ship to freight, he himself retaining the legal possession, and being liable to all the responsibilities of owner. Under such a letting of the ship the master is the agent of the owner, and the mariners are in his employment, and he is answerable for their conduct. By such a contract the charterer obtains no right of control over the vessel, but the owner is, in contemplation of law and in fact, the carrier of whatever goods are conveyed in the ship, for the reason that the charter-party is a mere covenant for the conveyance of the merchandise, or the performance of the service which is stipulated in it. In the other class of cases the vessel herself is let to hire, and the owner parts with the possession, command, and management of the vessel, the hirer thereby becoming the owner during the term of the contract, and, if need be, he appoints the master and mariners, and becomes responsible for their acts. Drinkwater v. The Spartan [Case No. 4,085] 1 Conk. Adm. 178. When goods and merchandise are carried by sea from one place to another, they are usually shipped on board a vessel under a charter-party or bill of lading. A charter-party is a contract whereby the ship-owner or master covenants or agrees for the use of the ship by the charterer for a particular voyage or adventure, or for some specified period of time. Although the ship-owner expressly grants the vessel to be used by the charterer, the contract will nevertheless not amount, in general, to a demise or bailment of the vessel, but simply to a contract for the use of the ship, together with the services of the master and crew, unless from the construction of the whole instrument it appears that the owner has surrendered the possession, command, and navigation of the vessel. If the end sought to be accomplished by the charter-party can conveniently be accomplished without the transfer of the vessel to the charterer, courts of justice are not inclined to regard the contract as a demise of the ship, although there may be express words of grant in the formal parts of the instrument. Christie v. Lewis, 2 Brod. & B. 410; Saville v. Campion, 2 Barn. § Ald. 510; Certain Logs

of Mahogany [Case No. 2,559]. On the other hand, if the nature of the service, and the due attainment of the object sought to be accomplished by the charter-party, requires, the vessel to be absolutely under the control, and subject to the orders and directions of the charterer, as if she is to be employed for transporting troops in time of war, or in the fishing or coasting trade, or as a general ship for the conveyance of merchandise by the charterer for third parties, and is to be at the general disposal of the charterer to sail upon any service that he may require, courts of justice will, as a general rule, give effect to the contract as a demise of the ship. In such cases the services of the master and crew, unless others are appointed by the charterer, pass as merely accessorial to the principal subject-matter of the contract, and they attorn to it, as it were, to the charterer, and become temporarily the servants of the charterer, and as such, for the time being, are bound to obey his orders. Similar views are held by Judge Story in the case of The Volunteer [Id. 16,991], and by Judge Betts in The Aberfoyle [Id. 16]; and such appears to be the general course of the decisions in this country. Gracie v. Palmer, 8 Wheat. [21 U. S.] 605; Webb v. Peirce [Case No. 17.320]; Clarkson v. Edes, 4 Cow. 470; Taggart v. Loring, 16 Mass. 336; Raymond v. Tyson, 17 How. [58 U. S.] 63; Pickman v. Woods, 6 Pick. 254; Vallejo v. Wheeler, Comp. 143; Holmes v. Pavenstedt, 5 Sandf. 100; Perkins v. Hill [Case No. 10,987]. In this case the owners did not charter the whole vessel, and they expressly stipulated with the charterers that she should be kept tight, stanch, well fitted, and provided with every requisite, and with men and provisions necessary for the voyage. They did not, therefore, part with the possession, command, or navigation of the vessel, and, without referring to any other provisions of the charter-party, suffice it to say that there can be no doubt, from the whole tenor of the instrument, that it is a contract of affreightment, and not a demise of the vessel.

Such being the fact, it becomes unnecessary to consider the second proposition assumed by the libellants. To prevent misconstruction, however, it may not be amiss to remark, that, when a charter-party of affreightment operates as a demise or bailment of the ship to the charterer, he becomes the carrier of the goods shipped on board, and, in case the vessel is employed by him as a general ship for the conveyance of merchandise, the master is his servant while procuring freight and contracting with third parties for the carriage of merchandise, and not the agent of the owners of the vessel; and the latter consequently cannot be made responsible for the loss of the goods shipped on board, or for any injury to the same under such contracts. But when the charter-party operates merely as a contract between the charterer and the ship-owner for the conveyance by the latter of goods and merchandise to be shipped on board by the charterer, the owners of the vessel are the carriers of the goods, and will in general be responsible to the charterer for the non-conveyance of them according to their contract.

More reliance is placed upon the third proposition assumed by the counsel for the libellants, and it deserves to be more carefully considered. It is predicated upon the fact that the passage of the vessel out was completed, and that she was lost on her return, and affirms that by the true construction of the contract the service stipulated to be performed is divisible. Assuming that the service in the outward passage was precisely equal to what the service would have been on the return passage if the vessel had not been lost, the counsel of the libellants insist that they are entitled to recover a moiety of the round sum which the charterers stipulated to pay for the voyage from Boston to Port au Prince and back to Boston. That view of the contract was sustained in the court below, and it was solely upon that ground that the decree was made. Decisions by that learned judge are entitled to very great respect, but in this instance I have not been able to concur in the conclusion to which he came in passing the decree. Whether the contract is entire or divisible must depend upon the terms and conditions set forth in the charter-party. Parties have a right to make their own contracts, and when they are fairly made and do not contravene any positive law or rule of public policy, they must be carried into effect according to the intention of the parties, to be derived from the language employed, the surrounding circumstances, and the subject-matter. Certain rules have been established for the interpretation of contracts, which a learned commentator says are the conclusions of good sense and sound logic applied to the agreement of the parties. Their object is to ascertain with precision the mutual understanding of the contract in the given case, and, like other deductions of right reason, they have been quite uniform in every age of cultivated jurisprudence. Those rules for the construction of contracts are the same in the courts of law and of equity, and it is a great mistake to suppose that they are not equally applicable in the admiralty. Eaton v. Lyon, 3 Ves. 692; 2 Kent, Comm. (9th Ed.) 756; Seddon v. Senate, 13 East, 74. Charter-parties are frequently informal instruments, sometimes having inaccurate clauses, and on that account must have a liberal construction, such as mercantile contracts usually receive in furtherance of the real intention of the parties and the usages of trade. In the construction of such instruments, as well as other mercantile contracts, the general rule is, that the construction should be liberal, agreeable to the real intention of the parties,

and conformable to the usage of trade in general, and of the particular trade to which the contract relates. Raymond v. Tyson, 17 How. [58 U. S.] 59; Abb. Shipp. (5th Am. Ed.) 250; 3 Kent, Comm. (9th Ed.) 276. Where the language of a contract is plain and clear, whether it be a charter-party or other written agreement, it must be understood that parties mean what they have plainly expressed, and in such cases there is nothing left for construction. But if from a view of the whole instrument the evident intention of the parties is different from the literal import of the terms employed to express their intention in a particular part of the instrument, that intention should prevail, notwithstanding it may appear to be inconsistent with such particular part, for the reason that the construction of the contract in the case supposed ought not to depend on any formal arrangement of the words, but should be collected from every part of the same as applied to the subject-matter to which it relates. Words are to be taken in their popular and ordinary meaning, unless some good reason appear to show that they were used in a different sense, and the whole instrument is to be viewed and compared in all its parts, so that every part of it may be made consistent and effectual. As a general rule, the delivery of the goods at the place of destination, according to the charter-party, is necessary to entitle the owner of the vessel to freight. Conveyance and delivery of the cargo form a condition precedent, and must be fulfilled in order to entitle the owner to freight, unless such delivery is prevented by the default of the shipper or his agent. A partial performance, says Chancellor Kent, is not sufficient, nor can a partial payment or ratable freight be claimed, except in special cases, and those cases are exceptions to the general rule, being such only as are called for by the principles of equity. 3 Kent, Comm. (9th Ed.) 298; The Nathaniel Hooper [Case No. 10,032]. Still, if the outward and homeward voyages be distinct, in a case like the present, freight is recoverable for the one though the other be not performed. But if by the terms of the contract they be one voyage, and the ship performed the outward and fails to perform the homeward voyage, no freight is recoverable. Mackrell v. Simond, 2 Chit. 666; 18 E. C. L. 454. Upon this subject the law is well settled, that if one entire voyage or whole service is stipulated for in the charter-party, the ship-owner cannot recover on the contract, unless the entire voyage or whole service is performed. It was so held by Parsons, C. J., half a century ago, in Coffin v. Storer, 5 Mass. 252; and such has been the settled law in this district from that period to the present time. In that case the ship was chartered for a voyage from Biddeford, in the state of Maine, to Surinam and a market, and back to Biddeford; and being wrecked on her homeward passage, it was held that no freight was earned under the charter-party, for the reason that the voyage was an entire voyage, and the hire was not payable until the voyage was completed. That decision was followed by the supreme court of Maine in Blanchard v. Buckman, 3 Me. 1, and is still the law in the courts of that state. So in Barker v. Cheviot, 2 Johns. 352, where a vessel was chartered for a voyage from New York to Martinique, and back to New York, it was held that no freight was due, although the vessel delivered the outward cargo, but was captured on her voyage home. Thompson, J., said in that case, which was decided in 1807, that the rule was too well settled to admit of being questioned. Scott v. Libby, Id. 336. Numerous decisions have been made to the same effect since the date of those last cited, and there are none to be found in the books which support the opposite view of the question. All of these cases have recently been reviewed by the supreme court of Massachusetts, in the case of Towle v. Kettell, 5 Cush. 20, and that court has again affirmed the same doctrine. Most of the adjudged cases were examined by the learned judge, who gave the opinion on that occasion, and those which are now supposed by the counsel for the libellants to be inconsistent with the general doctrine upon the subject were satisfactorily explained. Those explanations will not be repeated, and under the circumstances any further reference to authorities is deemed unnecessary. In that case the charter-party was for a voyage from Boston to Wilmington, in the state of North Carolina, and from thence to Cape Haytien, in the island of Hayti, and from thence to Boston, the charterers engaging to pay to the owner for the charter or freight of the vessel during the voyage in manner following, that is to say, fifteen hundred dollars, payable so much in Hayti as the master might want for the disbursement of the vessel, together with the foreign port charges, lighterage, and pilotage, and the balance on the discharge of the cargo in Boston. After arriving at Wilmington and loading, the vessel proceeded to Hayti; and having discharged her freight there, and taken on board her return cargo, she sailed for Boston, but was lost on the return passage. On that state of facts the court held that the charter-party was for one entire voyage, and as the vessel was lost on her return home the owner was not entitled to recover for the outward freight of the vessel. At the argument in this court it was suggested that the present case might be distinguished from the one just mentioned, on the ground that the balance of the freight in that case, beyond what was necessary for the disbursements of the vessel, was made payable at the home port. But the suggestion cannot have weight, for the reason that by necessary implication the same requirement is contained in the charter-party

under consideration. Beyond question such is the legal construction of the provision upon that subject, and whatever is contained in a written agreement by necessary implication is as much a part of the instrument as if it were written out in words. Unless that distinction can be upheld, and it is clear it cannot be, it is difficult to see upon what ground it can be supposed that any exists, as in all other respects save one the two instruments are substantially alike. Some stress is laid upon the fact that the charter-party in this case contains a provision that the charterers should advance what money the master might require for the disbursements of the vessel at the outward port, not to exceed one half the charter. No such limitation was annexed to that provision of the charter-party in the other case, but the owner agreed to pay so much of the amount stipulated to be paid for the charter of the vessel as the master might want at Hayti, for such disbursements without any limitation whatever, except the necessary wants of the vessel. Whatever distinction, therefore, exists between the two cases makes against the theory of the libellants, rather than in their favor, assuming that the other case was well decided. That provision, however, in my opinion, has nothing to do with the question under consideration, as it is one usually to be found in charter-parties of every description, and is carefully limited to the amount necessary to accomplish the purpose for which it was inserted. Whether the sum paid was more or less than might have been required is immaterial in this investigation, and cannot affect the liability of the owners in this suit. They paid what was demanded of them for that purpose, and in so doing they performed that part of the contract, and that provision is fully executed. Without doing violence to the language of the charter-party, I can form no other conclusion than that the contract in this case is for a voyage from Boston to Port au Prince and back to Boston. For the charter of the vessel to make that voyage the charterers agreed to pay the round sum of eighteen hundred dollars, and all foreign port-charges, pilotage, and lighterage. By the legal construction of the contract no part of the charter money except what the master might require for the disbursements of the vessel was to be paid until the voyage was completed; and having made these advances to the master for that purpose, according to the terms of the contract, and the voyage not having been completed, there is nothing remaining due from the charterers to the owners of the vessel. For these reasons the decree of the district court is reversed, and the libel must be dismissed with costs.