Smith, C. J.
Two questions are made.
1st. Whether an action of covenant can be maintained on this instrument. And, 2d, if it can, whether the facts warrant a recovery for any portion of the freight or hire; and, if so, for how much.
1. If this be not a sealed instrument, covenant cannot be maintained on it.
[After discussing the legal requisites of a seal, and holding that writing the word seal with a pen does not constitute a seal, the opinion proceeds as follows:] In this case, even if defendant had signed a written agreement, declaring that this instrument was to be considered as a deed, and the scroll (seal) as wax, and that he would not object to it as a deed on this account, I do not know that we could so consider it. He might, perhaps, admit that there was once a seal, which was broken off, and under such circumstances as to leave the instrument a deed. Here the defendant did not go that length. He declared this to be his seal. But it is not a seal. Suppose he had declared this writing a record. He can no more make it a deed than he can make it a record by any declarations of his. If it has the requisite formalities, it is a deed. Otherwise, it is not. To consider this writing as a deed would be at once to abolish the distinction between writings sealed and writings not sealed. The seal is a matter of substance in law; it changes the nature of evidence.
2. It is not absolutely necessary to decide the second ques *313 tion, whether the facts agreed are sufficient to warrant a recovery of any thing for freight or hire. But, as the Court have formed an opinion, it may save expense to the parties if it is now intimated. All the facts necessary in the case are stated. On this charter-part}[1], the defendant is doubtless liable for one-third of the charges of victualling, manning, the port charges, and pilotage; but, with respect to the freight or hire of the vessel, the objection is, that his covenant is to pay freight, and that no freight has been earned. It is a condition precedent that the vessel perform the voyage. She was let to defendant to carry his merchandise on this voyage. Defendant is to pay, at the stipulated rate, thirty days after the voyage performed.
The general principle is (and it applies as well to the charterer as to the merchant who puts his goods on board a general ship), that the contract is in its nature entire, and unless it be completely performed by the vessel’s arrival at the port of discharge, or the delivery of the goods at the place of destination, the charterer or merchant will, in general, derive no benefit from the time and labor expended in a partial performance, and, consequently, be liable to no payment whatever, although the vessel may have been hired by the month. The contract is to pay, if the voyage be performed, so much per month for the time employed in the voyage. The vessel is at the risk of the owner. If lost on the voyage, the charterer has, ordinarily, no remedy for the loss he sustains thereby. The owner does not undertake, at all events, that his ship shall perform the voyage. But he agrees that, if she does not, he is entitled to nothing for the hire. In the action for the freight or hire, therefore, he must show the voyage performed. This is no hardship on the owner; the price is regulated according to this understanding of the rights and obligations of the respective parties.
In its nature, the contract to furnish a ship for a voyage, or to carry merchandise to a foreign port, must be entire. A contract to carry goods half way from P. to M. would be absurd.
But it often happens (Abbott on Shipping, 315) that a ship *314 is hired by a charter-party to sail from one port to another, and from thence back to the first, at a certain sum, to be paid for every month of the duration of the employment: that is precisely this case.
. If this is to be considered as one entire voyage, then nothing is due for freight. But if the outward and homeward voyages are distinct, freight will be due for the proportion of the time employed in the outward voyage.
This question must be settled by giving a reasonable construction to the terms of the charter-party.
The case of Mackrel v. Simond & Hankey, Abbott (316), [2 Chit. Rep. 666], was held to be of this latter kind, two distinct voyages. From London to Plymouth and the Island of Grenada was one voyage; from Grenada to London was another. The first was performed, and freight or hire was allowed for the time employed in that; but nothing for the partial performance of the voyage from Grenada to London, because that was not completed. In that charter-party, the outward and homeward voyages were mentioned as distinct, and there were circumstances in the' case from which the Court inferred that the parties contemplated two distinct voyages. Suppose the charterer hire the vessel, and send her, or employ her in freighting. Here he has the benefit of the outward voyage, and can afford to pay the hire of the.vessel for that.
In the present case, the parties seem to have contemplated a prosperous voyage out and home. There is nothing which shows that two distinct voyages were contemplated. It is spoken of as a voyage; nothing is said of an outward and homeward voyage. The whole freight is to be paid in thirty days after the ship’s return to Portsmouth. There is no difference in the rate of hire for the outward and return voyage. The nature of the business in which this vessel was employed is such, as appears from the statement, as to make it absurd to suppose the charterer could think of two voyages. The round voyage must be performed before he could derive any benefit. His outward cargo was invested in molasses. If the molasses were lost .on the return, what did he gain by the *315 delivery of the lumber, or outward cargo, at Martinique ? It is not our business to make a contract for these parties. We are only called on to explain or construe the one they have made. But, if we had the power to make a contract for them, I see no ground for making a different one from that which they have made for themselves.
I consider the case of Byrne & others v. Pattinson, Abbott (319), [K. B. Trin. Term, 37 Geo. III.], as like the present. The voyage was from Liverpool to the Island of Madeira, and from thence to the Island of Barbadoes, and from thence back to Liverpool, Greenock, or Bristol. This was mentioned in the charter-party as a voyage; the freighter to pay so much per month for six months, certain, and to continue till the ship was discharged at Liverpool, &c., with two-thirds of pilotage and port charges, &c.; one month’s freight to be advanced, and some cash for disbursements, and the remainder, on the discharge of the vessel, by bills at three months. On the voyage from Madeira to Barbadoes, the ship was captured, and it was holden that the owner had no claim for freight. It became due at Liverpool, and not before. This is not so strong a case for an entire voyage as the present.
In Smith v. Wilson, 8 East, 437, the same doctrine was laid down; and the Court considered the terms of the contract, that the freight was to be paid on the arrival of the ship at her destined port in Great Britain, as material to show that it was all one voyage.
Barker v. Cheviot, 2 Johns. 352 (Abbott, 322, n.), I consider also as in point. There, indeed, the sum to be paid for freight was a gross sum, but that makes no difference in its bearing on the point now under consideration. They calculated on the probable time of the voyage: if longer, it was the gain of the charterer; if shorter, the gain of the owner. The action was assumpsit on the "marine law; all parties agreed that no action could be maintained on the charter-party. In that ease the outward cargo was delivered.
Coffin et al. v. Storer, 5 Mass. 252, I am not able to distinguish from the present. The voyage was from Biddeford to Surinam and a market, and back to Biddeford, at so much per *316 month. On her homeward passage, she was wrecked on Cape Cod, part of her cargo lost, and the remainder damaged. The Chief Justice said, if the employment of the vessel, as mentioned in the charter, could be considered as two distinct voyages, the defendant might be liable for the freight out; but he held that the charter-party would not admit of that construction ; it did not mention an outward, as distinct from a homeward, voyage, but speaks of a voyage commencing on the vessel’s sailing from Biddeford, and completed on her return to the United States; the price to be paid on the completion of the voyage. It was extremely clear that nothing could be recovered on the charter-party. But, in respect of the goods saved, it was held that, by the marine law, there being nothing in the charter-party to forbid it, the merchant was liable to pay freight for his goods, deducting the expenses incurred in transporting them to the port of delivery. That question does not arise in this case ; for, unfortunately, nothing was saved. But no action lies on the charter-party.
Judgment. [Plaintiff nonsuit, f] [1]

 “ ... If the eases in which the courts have been called upon to interpret charter-parties, where the performance of the entire contract has been prevented by a fortuitous event, are critically examined, it will be found that they have turned on distinctions so minute and subtle that, as is remarked in the case of Towle v. Kettell, one decision can hardly be relied on, as authority for another, unless there is between them a perfect identity.” Ware, J., in The Erie, 1859, 3 Ware, 225, 233.
For cases where it has been held that there was an indivisible contract of affreightment for an entire round voyage out and back, see Donahoe v. Kettell, 1858, 1 Cliff. 135; Towle v. Kettell, 1849, 5 Cush. 18; Blanchard v. Buckman, 1824, 3 Greenl. 1; Penoyer v. Hallett, 1818, 15 Johns. 332; Hamilton v. Warfield, 1830, 2 Gill & J. 482; Bigelow, C. J., in Benner v. Equitable Safety Ins. Co., 1863, 6 Allen, 222, 225. See also Gibbon v. Mendez, 1818, 2 B. & A. 17, 24-26. 1 Pars, on Ship, and Adm. 308.
For cases where it was held that the contract was divisible, and a portion of the freight recoverable, see The Erie, 1859, 3 Ware, 225; McGilvery v. Capen, 1856, 7 Gray, 525; Brewer v. Churchill, 1858, 45 Me. 64; Brown v. Hunt, 1814, 11 Mass. 45; Locke v. Swan, 1816, 13 Mass. 76. And see Cook v. Gowan, 1860, 15 Gray, 237.
As to the distinction between a contract for letting the vessel and. a contract of affreightment, see The Erie, 1859, 3 Ware, 225-227; Donahoe v. Kettell, 1858, 1 Cliff. 135, 137-140.