# Titman's Administrator *versus* Titman.

1. When a child makes a claim for wages against a father's estate, the presumption is against it, and the onus is on the child to show by clear and distinct evidence a contract to pay wages.

2. In a contract between a minor and an adult, the adult is bound, although the minor may not be.

3. Circumstances in this case evidencing a contract for wages between father and child, and acknowledgments to take it out of the limitation act.

March 21st 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

[Titman *v.* Titman.]

Error to the Court of Common Pleas of *Pike county :* No. 394, to January Term 1868.

This was an action of assumpsit, brought May 26th 1866, by Lenah M. Titman against Jeremiah Titman, administrator, &c., of John Titman, deceased.

The claim was for services rendered by the plaintiff to the decedent, who was her father, from 1848, when she was eighteen years of age, until 1866, when the decedent died. The defendant pleaded non assumpsit and the Statute of Limitations.

Isaac Clifford testified, that in 1848 the decedent in his presence told the plaintiff that he would give her $1 a week if she would stay with him; she said she would stay.

John J. Titman, a son of decedent, testified that in 1848, the decedent told plaintiff if she would stay and work for him, he would give her $1 a week; she said she would stay and work for him; she remained until her father's death. She was from home once; the decedent sent the witness for her to tell her to come home, and he would give her $1 a week. After the mother's death, in December 1863, the decedent said he was to give the plaintiff $2 a week; she said she ought to have more, but she would stay for that. Decedent said he was not able to pay while he was living, but he would leave enough to pay it; that after the rest of his debts were paid, she would have the rest of it; he said he was not able to.pay her during his life, but would leave enough to pay her; he said this in her presence; she said she did not want money so long as she had her clothes.

Charles Titman testified, that in a conversation with her father, the plaintiff said she had been working there, and maybe would never get anything. The father said she should have her pay; she had nothing to account for her on her work; she had nothing on her wages; this was a few days before his death.

A number of other witnesses testified to similar conversations between the decedent and the plaintiff; and also to declarations by the decedent not in her presence, that he was to pay her as above testified.

The defendant gave evidence in answer to the plaintiff's case. He also gave evidence that on the day of taking the inventory of the effects of the decedent, the plaintiff said if the administrator would deliver to her certain property which she claimed to be her own, she had no claim on the estate for wages, and that the property was delivered to her.

The defendant's points were:—

1 The contract or agreement spoken of by some of the witnesses, as made by the intestate with his daughter before she was twenty-one years of age, was not binding upon the intestate, and no recovery for wages can be had thereon.

2. There is not in this case such clear, distinct and satis-

14 P. F. Smith—31

[Titman *v.* Titman.]

factory evidence of a contract for wages, between the intestate and the plaintiff, as to warrant a recovery by said plaintiff.

3. If the plaintiff can recover anything in this case, she cannot recover for any services or work done, more than six years prior to the institution of this suit.

4. The continuance of the services from year to year raises no presumption against the intestate of the renewal or continuance of the alleged original contract.

5. The declarations of the decedent are not evidence to aid or establish a special contract, unless the original contract is proved in clear, express and unequivocal terms.

6. If the jury believe the testimony of Joseph L. Gardner and Lemuel L. Hawk, then such a settlement and compromise was made between the plaintiff and administrator as will prevent a recovery in this case.

7. The evidence is not so clear and unequivocal as to leave no doubt that the relation between the intestate and the plaintiff was not the ordinary one of parent and child, but of master and servant, and there cannot therefore be any recovery in this case.

The court (Jones, P. J.) charged :—

"I. The contract, so called of 1848, was made when plaintiff was but eighteen. The father was entitled to her services at that time. He agreed to pay for what he had a right to receive—what was his own. She was not of age to make a valid contract. But suppose the father was pleased to put her services on the footing of a servant—who shall deny his right? And if no one can deny his right to do that, and he does it, who other than himself shall deny her right to recover? If she was a stranger, no one could doubt her right to recover. Lenah could recover only on that footing. Her father could make her a stranger. Could put their relations on the footing of an express contract, and the question is, did he do it? If he did, and there is nothing else in the way, she could recover for such wages.

"II. There must be clear, distinct and satisfactory evidence of a contract for wages between the intestate and the plaintiff, old John T. and Lenah, to warrant a recovery by the plaintiff, but we cannot say there is no such evidence. There is such clear, distinct and satisfactory evidence in the case, if you believe it.

"III. The plaintiff can recover for services done more than six years prior to the institution of this suit, if there be evidence in the case that satisfies you the contract, if any, was that the wages were not to be paid until old John Titman's death. The wages so became by such an agreement a debt of the present, to be paid in the future, and the statute could only run from the death. Or, if a clear, full, explicit, distinct acknowledgment of the debt was made and promise to pay it.

"IV. These services were by the week, at so much per week,

[Titman v. Titman.]

and ran through years. Were not services by the year, rendered from year to year, year in and year out? It would be hard to require such a contract to be renewed every week. I should say that in such a case there is no renewal required—that whatever time was served would be taken as a whole.

"V. This is answered in the affirmative. Upon this principle precisely all these declarations were received in evidence. If an original contract be not proved in clear, express and unequivocal terms, these declarations go for nothing. If such contract be proved, they go in corroboration of it merely.

"VI. This would be so if you take the evidence precisely as it stands, but without imputing anything to the witnesses you will enter into the evidence and satisfy yourselves that it is correct—that the witnesses are not mistaken.

"VII. I cannot say the evidence is not so clear and unequivocal as to leave no doubt that the relation between the parties was not the ordinary one of parent and child, but of master and servant.

"1. If the jury believe that no relation of master and servant but only of parent and child existed between John Titman and Lena, your verdict should be for the defendant.

"2. If the jury find that at the appraisement she agreed to release her claim for services if the administrator made no objections to her receiving her things in the house, and that was done, the verdict should be for the defendant.

"3. If the jury believe that the relation of master and servant was created between old John Titman and Lenah, by a clear, distinct and satisfactorily expressed contract between them, she to be paid one dollar a week up to her mother's death and two dollars after that; the payment to be postponed till after his death, your verdict should be for the plaintiff."

The verdict was for the plaintiff for $1030.

The defendant took out a writ of error, and in fifteen specifications assigned the charge for error.

*W. Davis*, for plaintiff in error.—The contract made before the plaintiff was of age was without consideration and not binding. Chitty on Contracts 10, 25, 27, 51. What was not said in plaintiff's presence was not a promise: Kyle v. Wells, 5 Harris 290; Hertzog v. Hertzog, 5 Casey 465; Mosteller's Appeal, 6 Id. 473. The acknowledgment to take the case out of the statute was not plain, unambiguous, express and distinct: Gilkyson v. Larue, 6 W. & S. 217; Morgan v. Walton, 4 Barr 321; Emerson v. Miller, 3 Casey 280; Weaver v. Weaver, 4 P. F. Smith 152. The evidence must identify the debt: Suter v. Sheeler, 10 Harris 308; Shitler v. Bremer, 11 Id. 413; Burr v. Burr, 2 Casey 284. Admissions of indebtedness, or promises to pay, to toll the statute, must be to the plaintiff or his agent: Kyle v. Wells, 5

[Titman *v.* Titman.]

Harris 286; Gillingham *v.* Gillingham, Id. 302; Chandler *v.* Glover's Admr., 8 Casey 509.

Contracts between parents and children are to be proved only by evidence direct, positive, express and unambiguous; Poorman *v.* Kilgore, 2 Casey 372; Harris *v.* Richey, 6 P. F. Smith 395; Bash *v.* Bash, 9 Barr 260.

*W. H. Jessup*, for defendant in error.—A father may emancipate a minor child : Galbraith *v.* Black, 4 S. & R. 207 ; U. States *v.* Mertz, 2 Watts 406; McClosky *v.* Cyphert, 3 Casey 220; Jenney *v.* Alden, 12 Mass. 375 ; Wodell *v.* Coggeshall, 2 Met. 89 ; Burlingame *v.* Burlingame, 7 Cowen 92; Cannovar *v.* Cooper, 3 Barb. 6, 115; Shute *v.* Door, 5 Wendell 206; McCoy *v.* Huffman, 8 Cowen 85.

Contracts of minors may be sustained against an adult, 1 Pars. on Contr. 330. The evidence to warrant a recovery was sufficient: Neel *v.* Neel, 9 P. F. Smith 347.

The opinion of the court was delivered, March 28th 1870, by

SHARSWOOD, J.—It answers no good purpose to multiply points, exceptions and specifications of error, unnecessarily. On the contrary, it tends only to embarrass the court, and increase their labors in the consideration and determination of a cause. In this case there are fifteen assignments of error, which may all, however, be disposed of by the resolution of four questions.

1. The first is, whether there was sufficient evidence to submit to the jury that the relation between the plaintiff and the decedent was not that of father and daughter merely, but superadded to that the contract relation of master and servant. The presumption primâ facie was undoubtedly against the plaintiff's claim, and the onus was therefore on her to show, by clear and distinct evidence, a contract by her father to pay her wages. There was the testimony of more than one witness that, in 1848, John Titman, the decedent, told his daughter, the plaintiff, that he would pay her wages at the rate of one dollar a week, and that after the death of his wife, which occurred in 1863, he made another agreement with her at two dollars a week. Nor was there wanting other evidence in corroboration of this, by declarations made by him to others, that she was to be paid for her services. The case in this respect is quite as strong as Neel's Administrator *v.* Neel, 9 P. F. Smith 347.

2. But when this alleged contract was originally made, the plaintiff was a minor, only eighteen years old. It is not improbable that, according to a very prevalent error throughout the country, arising from the provisions of the Act of September 29th 1770 (1 Smith 309), that the term of an indenture of apprenticeship of a female shall expire at or before that age, she was con-

sidered to have then attained her majority. It is contended that, so far as regarded the three years yet to elapse before she arrived at twenty-one, the agreement by her father was without consideration, as he was, in law, entitled to her services. But we do not think that this ground was so clearly presented to the court below as it ought to have been. No distinction was made, in any of the points, between the liability of the father for these three years, and the subsequent time during which the plaintiff continued to serve in the house. The only one which seemed to include it was the first: " that the contract or agreement spoken of by some of the witnesses as made by the intestate with his daughter, before she was twenty-one years of age, was not binding upon the intestate, and no recovery for wages can be had thereon." It is very well settled that when a contract is made between a minor and an adult, the adult is bound, though the minor may not be: Addison on Contracts, § 82. The court might then have simply refused so to charge. It is true that the answer of the learned judge gives a reason for the refusal, which would apply equally to the period before and after majority, namely, that the evidence, if believed, showed an emancipation of the child, and that the contract of a father with an emancipated child, for services, is valid and binding. We do not deem it necessary to decide whether this is the law. The invalidity of the contract was apparently put, in the point presented, solely on the want of capacity in the minor, and not on the want of consideration; because the inference asked to be drawn was not that the plaintiff could not recover for services rendered during her minority, but that she could not recover at all. Had the attention of the court been drawn to this specially, they would doubtless have referred to the statement of the agreement as contained in the testimony of John T. Titman. He said that the decedent " frequently talked about what he would give her when she was by and when she was not. He said he was going to give her a dollar a week from the time she was eighteen till her mother's death, if she would stay that long." Now if this was the contract, and the plaintiff performed her part of it by staying until her mother's death, which was not disputed, then there was sufficient consideration to support the promise to pay for the entire period of service, as well before as after she attained majority, however it might have been if the contract had been general, or from year to year. The plaintiff in error cannot, therefore, complain of the charge in this respect.

3. We have next to consider the plea of the Statute of Limitations. It cannot be disputed that there was evidence that John Titman said that the plaintiff was not to be paid till his death, that he could not afford it during his life, but there would be enough left then to compensate her. Certainly there was no error, then, in the instruction that if the jury believed this to

[Titman *v.* Titman.]

have been the agreement, the plaintiff's cause of action did not accrue until her father's decease, which took place in 1866. The learned judge added, "or if a clear, full, explicit, distinct acknowledgment of the debt was made, and promise to pay." It was urged that there was no sufficient evidence of this. Charles Titman testified to a conversation between the parties a few days before John Titman's death, in which he explicitly acknowledged that the plaintiff had received nothing on her wages, she had nothing to account for on her work, and that she should have her pay. He did not state the amount due her, but certainly this was not essential. He identified the claim for wages, and clearly admitted that the whole of it was due—that he had neither set-off nor payment in part to plead to it. There was no error, therefore, in the charge in this.

4. The question of the alleged accord and satifaction was fairly submitted to the jury. The point presented by the defendant on that subject was affirmed, and the remark added that the jury should weigh the evidence and satisfy themselves that the witnesses were not mistaken, was perfectly correct. Other witnesses present at the same time had stated the transaction differently.

Judgment affirmed.